UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK



PAVEL DUROV, TELEGRAM MESSENGER LLP, and
DOGGED LABS LIMITED,

JUDGE SCHOFIELD                    Plaintiffs,

- against -

ILYA SHERBOVICH, ILYA PEREKOPSKY, DAVID
AXEL NEFF, YURI KACHURO, VICTORIA
LAZAREVA, UNITED CAPITAL PARTNERS,
DIGITAL FORTRESS LLC, TELEGRAM LLC,
PICTOGRAPH LLC, and JOHN DOES 1-3,

                              Defendants.

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

14 CV 3063

Plaintiffs Pavel Durov, Telegram Messenger LLP ("Telegram Messenger"), Dogged Labs

Limited ("Dogged Labs," collectively with Mr. Durov and Telegram Messenger "Plaintiffs") by

their attorneys, Fried, Frank, Harris, Shriver & Jacobson LLP, as and for their complaint against

Defendants Ilya Sherbovich, Ilya Perekopsky, David Axel Neff, Yuri Kachuro, Victoria

Lazareva, United Capital Partners, Digital Fortress LLC, Telegram LLC, Pictograph LLC, and

John Does 1-3 (collectively, the "Defendants") allege, upon knowledge as to themselves and

their own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     Mr. Durov is the founder and owner of TELEGRAM, a cloud-based heavily

encrypted messaging service. A description of the TELEGRAM service is associated with the

universal resource locator https://telegram.org/. The TELEGRAM service currently has more

than 35 million users. In the United States, through Defendants Digital Fortress LLC and

Telegram LLC, Mr. Durov personally directed and financed the acquisition, configuration, and

operation of host computer systems and network apparatus that provision TELEGRAM service including transmission of a computer application program ("App") for configuring mobile devices to send and receive encrypted messages utilizing the TELEGRAM protocol.

2.    Defendants Ilya Sherbovich ("Sherbovich"), Yuri Kachuro ("Kachuro"), and Victoria Lazareva ("Lazareva") are partners in a Russian investment fund called United Capital Partners.  As alleged more fully below Defendants Sherbovich, Kachuro, and Lazareva have engaged in a series of unlawful and criminal acts designed to coerce Mr. Durov into transferring ownership and control of the TELEGRAM service and assets to Defendants Sherbovich, Kachuro, and Lazareva or entities in which those Defendants have personal interests.  These unlawful and criminal acts have included, among other things, (i) wire fraud in violation of 18 U.S.C. § 1343, (ii) theft and unauthorized use of account numbers with intent to defraud and obtain control over the distribution of the TELEGRAM App, and (iii) commercial bribery in violation of New York state law.

3.    Defendants have transmitted or caused to be transmitted in interstate or foreign commerce by means of wire or radio communication, for the purpose of executing a scheme or artifice to defraud, writings, signs, signals, or pictures that falsely and deceptively state that Defendant Telegram LLC is the source of the TELEGRAM App for the iPhone operating system, when in truth and in fact, since at least April 2, 2014, Telegram LLC has been outside of Plaintiffs' control and a front for Defendants Sherbovich, Kachuro, Lazareva, or others who had and have no role whatsoever in the development, updating, or maintenance of the TELEGRAM system or technology.  The conduct of Defendants has caused and threatens Plaintiffs with imminent irreparable harm to the goodwill associated with the TELEGRAM service and business that Plaintiffs developed and own.

-2-

## JURISDICTION

4.      This action arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-64, the Robinson-Patman Act, 15 U.S.C. § 13, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Lanham Act, 15 U.S.C. §§ 1051 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201, and the common and statutory law of the State of New York.

5.      This Court has subject matter jurisdiction to hear this action under at least 15 U.S.C. §§ 15 and 1121, and 28 U.S.C. §§ 1331, 1337, and 1367.

## PARTIES

6.      Plaintiff Telegram Messenger is a Limited Liability Partnership organized and existing under the laws of England and Wales, having its principal place of business at Suite 2, 23-24 Great James Street, London, United Kingdom, WCN1 3ES.  Telegram Messenger is used to publish the TELEGRAM App for ANDROID.

7.      Plaintiff Dogged Labs is a British Virgin Islands entity with its registered offices at Geneva Place, Waterfront Drive, P.O. Box 3469 Road Town, Tortola, British Virgin Islands. Dogged Labs invested over $3 million in Digital Fortress LLC, Telegram LLC, and Pictograph LLC.

8.      Plaintiff Pavel Durov is an individual resident of the Russian Federation.  Mr. Durov is widely described as the Mark Zuckerberg of Russia.  *See* "Russia's Zuckerberg Launches Telegram, a new instant messenger service," Reuters (Aug. 30, 2013), http://www.reuters.com/article/2013/08/30/idUS74722569420130830. (Exh. 1).[1]

---

[1]      Bank account information, personal email addresses, and similar confidential information have been redacted on the exhibits and the redaction noted.

9.      Mr. Durov and Telegram Messenger are the beneficial owners of all rights in and to the trademark and service mark TELEGRAM as applied to electronic messaging services. Telegram Messenger is the owner of the European Community Trade Mark Application Serial No. 012800587.

10.      Mr. Durov is the beneficial owner of the United States application for registration of TELEGRAM, which he instructed and paid Telegram LLC to file on his behalf, and of the goodwill associated with the use of the TELEGRAM mark in association with electronic messaging provided in the United States.

11.      Defendant David Axel Neff ("Neff") is an individual resident of the State of New York.

12.      Defendant Sherbovich is an alien individual.  Defendant Sherbovich is the President and Managing Partner of United Capital Partners.

13.      Defendant United Capital Partners ("UCP") describes itself on its website (www.ucpfund.com) as "an independent, private investment group established in 2006 to manage the assets of its partners and co-investors . . . [which] focuses on high potential Russian private companies and foreign liquid securities."  The funding behind UCP is uncertain and press articles have speculated on this, including the involvement of Mr. Igor Sechin.[2]   UCP's office is located at Paveletskaya Plaza, 2 Paveletskaya Square, bld 2, Moscow 115054, Russia.

14.      Defendant Kachuro is an individual resident of the State of New York.

15.      Defendant Lazareva is an alien individual.

---

[2]  *See, e.g.*, Exh. 2A, an English translation of an article entitled "Durov Theatre:  Why the Founder of VKontakte Lost the Battle for the Social Network"; Exh. 3A, an English translation of an article published by *Hopes & Fears*, a digital magazine about business in Russia, regarding UCP's acquisition of a 48% interest in VKontakte; Exh. 4A, an English translation of an article entitled "Seekers of the Social Network."  The original foreign language versions of the articles are Exhibits 2B, 3B, and 4B respectively.

16.    Defendant Ilya Perekopsky ("Perekopsky") is an alien individual.

17.    Defendant Digital Fortress LLC is a limited liability company organized and existing under the laws of the State of New York, having its principal place of business at 1725 Mainplace Tower, Buffalo, New York 14202.

18.    Defendant Telegram LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its registered office at 1521 Concord Pike, Suite 303, Wilmington, Delaware 19803.

19.    Defendant Pictograph LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its registered office at 1521 Concord Pike, Suite 303, Wilmington, Delaware 19803.  Pictograph LLC is a separate project from TELEGRAM.  The Pictograph App is still in the development stage and has not been made available to the public.

20.    Digital Fortress LLC, Telegram LLC, and Pictograph LLC are sometimes referred to as the "LLCs."

21.    John Does 1-3 are named in the place of the entity or entities that have acquired Digital Fortress LLC, Telegram LLC, and Pictograph LLC and have participated in the scheme but are presently unknown to Plaintiffs.  In an April 2, 2014 letter from Defendant Sherbovich to Mr. Durov, Defendant Sherbovich stated that "an affiliate of UCP has acquired from Mr. Neff three Telegram related entities:  Telegram LLC, Digital Fortress LLC, and Pictograph LLC." (Exh. 35 at 2).

22.    Defendants Sherbovich, Kachuro, Lazareva, UCP, and John Does 1-3 are sometimes referred to as the UCP Partner Defendants.

## BACKGROUND FACTS

## FOUNDING OF TELEGRAM

23.     Mr. Durov is the creator of a widely-used social networking website called VKontakte ("VK," pronounced v'kon-TAK-tyuh, which means "in contact" in Russian), founded in 2006. By August 2013, VK had more than 210 million users and was the third most visited website in the Russian Federation.

24.     In December 2011, large street protests occurred in Moscow in response to what was perceived as fraudulent parliamentary elections in Russia.  In connection with these protests, Russia's internal security agency, the FSB, sent Mr. Durov a request to close seven groups on VK that were allegedly organizing and publicizing opposition demonstrations.  Mr. Durov refused.

25.     In connection with these demonstrations, Mr. Durov's home in St. Petersburg was raided by Russian security forces.  The raid on his family home had a profound effect on Mr. Durov.  He realized at this moment that he did not have available to him an instant method of communicating with his family and friends that could avoid being intercepted by the Russian security forces or any other third party.

26.     In response to the raid on his home, Mr. Durov began working on a confidential mode of communicating that could not be intercepted by security agencies.  This effort led, eventually, to the creation of TELEGRAM.

27.     TELEGRAM is a messaging application.  Messaging applications, like TELEGRAM and WhatsApp (which the press reports was recently bought by Facebook for $19 billion), allow users to send text messages, pictures, and videos on smartphones. TELEGRAM is faster and safer than WhatsApp, and contains a secure chat channel for users to interact instantly on a line that is established through TELEGRAM's client-encryption software.

28.     Due to the raid on his home and other security concerns, Mr. Durov sought to distance himself from record ownership of TELEGRAM and decided that TELEGRAM and its assets were to be spread out among a series of entities in various jurisdictions, including the United States.  Mr. Durov provisioned the TELEGRAM service by means of trusted individuals, including Defendants Neff and Perekopsky, who were provided money by Mr. Durov and who undertook to form corporate entities and to secure physical facilities for hosting and running TELEGRAM software and providing TELEGRAM App software to end users.  In addition to the Defendant U.S. TELEGRAM entities, Mr. Durov personally financed and directed the establishment of Telegraph Inc. (Belize), Digital Fortress Corp. (Panama), OOO Telegraph (Russia), and Plaintiff Telegram Messenger LLP (UK and Wales).

29.     On behalf of Mr. Durov, Defendants Perekopsky and Neff caused Digital Fortress LLC to enter into contracts with third parties to house servers that run TELEGRAM software and process communications that occur when end users send messages using the TELEGRAM App software.

30.     On behalf of Mr. Durov, Defendants Perekopsky and Neff caused Telegram LLC to make certain TELEGRAM software available for download through the Apple App Store and to file and prosecute applications for registration of TELEGRAM as a trademark and service mark in the United States.

31.     In accepting monies from Mr. Durov and undertaking actions necessary to provision the TELEGRAM service in the United States, Defendants Perekopsky and Neff stood in a relationship of trust and confidence to Mr. Durov and knew, understood, and agreed that they were acting on Mr. Durov's behalf and that no actions outside of ordinary course of

operations could be taken with respect to the TELEGRAM service or technology without Mr. Durov's personal approval or consent.

32.     Mr. Durov provided Defendant Perekopsky with the names of the entities to be formed (*i.e.*, Digital Fortress LLC and Telegram LLC) to support and provision the TELEGRAM service in the United States.  Mr. Durov also provided Defendant Perekopsky with the Pictograph name for the third LLC.

33.     Mr. Durov provided Defendant Perekopsky with access to his personal email account and allowed him to make payments to third parties from accounts under Mr. Durov's control.  Defendant Perekopsky understood and agreed that those funds were to be used only for projects approved by Mr. Durov and for the benefit of Mr. Durov and his companies, and that he would be acting as a fiduciary for Mr. Durov.

34.     Defendant Perekopsky recruited Defendant Neff (his college friend who was residing in the United States) to serve as the manager and nominal owner of the LLCs for Mr. Durov, who would be the beneficial owner.  As the beneficial owner, Mr. Durov was to have the right to make all material decisions and approve all actions outside the ordinary course of business, including, but not limited to, any and all transfers of the LLCs.

35.     Defendants Perekopsky and Neff exchanged repeated electronic correspondence between themselves and with Mr. Durov in connection with the provisioning of the TELEGRAM service in the United States.  For example:

- On May 1, 2012, Defendant Neff sent an email to Defendant Perekopsky and Mr. Durov outlining a potential structure for TELEGRAM that would enable the utilization of certain tax breaks provided by the Irish government. (Exh. 5).

- On May 1, 2012, Defendant Neff sent an email to Mr. Durov and Defendant Perekopsky, which followed up on an April 30, 2012 email from Defendant Neff to Defendant Perekopsky, regarding the potential for establishing a data center in Buffalo, New York. (Exh. 6).  On May 8, 2012, Defendant Neff sent another

email to Mr. Durov and Defendant Perekopsky regarding potential data centers. (Exh. 7).

- On May 9, 2013, Defendant Perekopsky sent Mr. Durov an email that copied in an email he received previously from Defendant Neff explaining how an LLC would be established that would open an account for the App Store. This was the genesis of Telegram LLC. Defendant Neff further stated in the email that "moving forward, we can do this for all new apps that are released. Then eventually transfer ownership of each of the Delaware LLC's to one main company. Meaning that each small company, registered in Delaware will be owned and operated by a main company elsewhere." (Exh. 8).

- On June 10, 2013, Mr. Durov received another email from Defendant Perekopsky, addressing tax implications associated with Telegram LLC and Pictograph LLC selling Apps in the United States through the App Store. (Exh. 9).

- On September 29, 2013, Mr. Durov confirmed Defendant Perekopsky's request that $360,000 be transferred from Bullion Development Limited to Digital Fortress LLC's bank account with Bank of America in New York City. (Exh. 10).

- On February 5, 2014, Defendant Neff sent Mr. Durov an email informing him that Digital Fortress LLC's bank account was "low on funds," and requesting that $200,000 be wired to its bank account. (Exh. 11).

- On March 13, 2014, Mr. Durov sent Defendant Neff an email regarding "transferring the US trademark, servers, datacenter contracts, AppStore accounts etc." to a non-profit entity that would be established in Britain. Defendant Neff responded that he would begin to research this issue for Mr. Durov, thus confirming that he was nothing more than Mr. Durov's nominee. (Exh. 12).

36.    In 2012 and 2013, Mr. Durov transferred a total of approximately $3 million to Defendant Perekopsky for the personal services that he provided to Mr. Durov in his position as Mr. Durov's agent and fiduciary. These payments were related to work Defendant Perekopsky did managing Mr. Durov's personal affairs. A portion of this payment was compensation for Defendant Perekopsky's assistance in establishing Digital Fortress LLC, Telegram LLC, and Pictograph LLC.

37.    At the end of 2013, Defendant Perekopsky instructed Mr. Durov's banker to wire a $70,000 payment from Mr. Durov's account to an entity controlled by Defendant Neff.

Defendant Perekopsky explained to Mr. Durov that Defendant Neff had requested $70,000 as a bonus for Defendant Neff's work on the TELEGRAM project.

38.     All of the funds invested in Digital Fortress LLC and Telegram LLC (and Pictograph LLC) came from companies owned or controlled by Mr. Durov, including Bullion Development Limited, Dogged Labs, and Telegraph Inc.  Through these companies, Mr. Durov provided more than $4.8 million to Defendants Perekopsky and Neff.

39.     These payments were made by wire transfer in interstate or foreign commerce to Digital Fortress LLC's account at the branch of Bank of America, NA, located at 100 West 33rd Street, New York, New York 10001.  For example, Mr. Durov directed the transfer of:

- $15,700 from Telegraph Inc. on March 28, 2013 to cover expenses related to "4th [q]uarter [e]xpenses office downtown Buffalo at the data center" (Exh. 13);

- $32,000 from Telegraph Inc. on May 2, 2013 to cover "[o]ffice [s]taff April-June, [m]iscellaneous [o]ffice [e]xpenses, [r]ent/[s]parkpr [p]ayment/[d]omains" (Exh. 14);

- $355,550 from Bullion Development Limited on July 2, 2013 for the "transfer for new equipment and renewal services for data-centers" (Exh. 15);

- $100,000 from Telegraph Inc. on August 12, 2013, the debit advice does not set forth a purpose for the transaction (Exh. 16);

- $54,000 from Telegraph Inc. on August 21, 2013, the debit advice does not set forth a purpose for the transaction (Exh. 17);

- $360,000 from Bullion Development Limited on September 30, 2013 for "[p]ayment for datacenters" (Exh. 18);

- $145,000 from Telegraph Inc. on November 19, 2013, the debit advice does not set forth a purpose for the transaction (Exh. 19);

- $760,000 from Dogged Labs on December 27, 2013, the debit advice does not set forth a purpose for the transaction (Exh. 20);

- $200,000 from Dogged Labs on February 5, 2014, the debit advice does not set forth a purpose for the transaction (Exh. 21);

- $1,600,000 from Dogged Labs on February 20, 2014 for the "purchase of equipment" (Exh. 22);

- $470,000 from Dogged Labs on February 24, 2014, the debit advice does not set forth a purpose for the transaction (Exh. 23); and

- $733,000 from Dogged Labs on March 24, 2014, the debit advice does not set forth a purpose for the transaction (Exh. 24).

40.      Some of the funds transferred to Digital Fortress LLC were thereafter paid by or at the direction of Defendants Neff and Perekopsky to or for the benefit of Digital Fortress LLC, Pictograph LLC, and Telegram LLC, without objection from Plaintiffs based on their understanding that the LLCs were under the ultimate control and beneficial ownership of Mr. Durov.

41.      Additional payments were made by Mr. Durov into a company known as Digital Fortress Corp., Panama.  These contributions were used to purchase equipment for the worldwide TELEGRAM system, including the servers that the TELEGRAM system uses.  Those payments were as follows:

- $1,000,000 from Bullion Development Limited on May 23, 2012 (Exh. 25);

- $2,000,000 from Bullion Development Limited on August 22, 2012 (Exh. 26);

- $1,000,000 from Bullion Development Limited on September 7, 2012 (Exh. 27);

- $1,000,000 from Bullion Development Limited on September 10, 2012 (Exh. 28);

- $110,000 from Bullion Development Limited on October 8, 2012 (Exh. 29);

- $100,000 from Bullion Development Limited on November 6, 2012 (Exh. 30);

- $150,000 from Bullion Development Limited on January 10, 2013 (Exh. 31);

- $250,000 from Bullion Development Limited on February 1, 2013 (Exh. 32);

- $200,000 from Bullion Development Limited on February 19, 2013 (Exh. 33); and

- $25,000 from Bullion Development Limited on March 4, 2013 (Exh. 34).

42.    Beginning at a time currently unknown to Plaintiffs, but not later than the end of January 2014, Defendants Perekopsky and Neff and the UCP Partner Defendants formed an association-in-fact enterprise and then subsequently became associated with Digital Fortress LLC, Telegram LLC, and Pictograph LLC and caused the LLCs to join the association-in-fact enterprise.

43.    Beginning at a time currently unknown to Plaintiffs, but not later than the end of January 2014, the UCP Partner Defendants conspired with Defendants Neff and Perekopsky to conduct the affairs of the association-in-fact enterprise and subsequently the affairs of Digital Fortress LLC, Telegram LLC and Pictograph LLC through a pattern of racketeering activity in interstate or foreign commerce as more fully alleged below.

44.    Beginning at a time currently unknown to Plaintiffs, but not later than the end of January 2014, the UCP Partner Defendants and Defendants Neff and Perekopsky participated in the conduct of the affairs of the association-in-fact enterprise and subsequently the affairs of Digital Fortress LLC, Telegram LLC, and Pictograph LLC through a pattern of racketeering activity in United States commerce as more fully alleged below.

45.    Beginning at a time currently unknown to Plaintiffs, but not later than the end of January 2014, the UCP Partner Defendants did knowingly, willfully, and unlawfully, and for the purpose of corrupting Defendants Neff and Perekopsky and inducing them to breach fiduciary duties owed to Mr. Durov, pay or promise to pay Defendant Perekopsky approximately four million British Pounds to act against Mr. Durov (to provide information about TELEGRAM and Mr. Durov and corrupt Defendant Neff) and paid bribe money to Defendant Neff to induce him

to transfer TELEGRAM assets and property to the UCP Partner Defendants, or one or more

entities owned or controlled by the UCP Partner Defendants.

46.    On April 2, 2014, at a meeting in Moscow, Russia Defendant Sherbovich told

Mr. Durov that UCP or a UCP affiliate had purportedly "acquired" Digital Fortress LLC,

Telegram LLC, and Pictograph LLC from Defendant Neff for a "substantial sum" of money.  In

truth and in fact, the UCP Partner Defendants and Defendant Perekopsky induced Defendant

Neff to transfer TELEGRAM-related property by means of bribe money paid to Defendant Neff.

47.    At all relevant times Defendant Perekopsky and the UCP Partner Defendants

knew that Defendant Neff had no beneficial interest in Digital Fortress LLC, Telegram LLC, or

Pictograph LLC whatsoever.  During the April 2, 2014 meeting, Defendant Sherbovich presented

Mr. Durov with a "term sheet" which acknowledged Mr. Durov's ownership of the TELEGRAM

technology and the entities provisioning the TELEGRAM service outside the United States.

48.    On March 13, 2014, Defendant Perekopsky told Mr. Durov that the UCP Partner

Defendants had promised to pay him approximately four million British Pounds (approximately

$6.7 million, at current exchange rates) for helping them take control of the TELEGRAM service

and technology away from Mr. Durov, a sum that Defendant Perekopsky said would enable him

to obtain a residency permit in England and have sufficient excess funds to live comfortably.

49.    Following Mr. Durov's meeting with Defendant Sherbovich on April 2,

Defendant Sherbovich sent Mr. Durov a letter asserting that a UCP affiliate had purportedly

acquired Telegram LLC, Digital Fortress LLC, and Pictograph LLC from Defendant Neff.

(Exh. 35 at 2-3).

50.    Three hours after the conclusion of Mr. Durov's meeting with Defendant

Sherbovich on April 2, Defendant Neff did knowingly, willfully, and unlawfully, and with intent

to defraud, change the password to TELEGRAM's App Store account with Apple Inc.
Thereafter, on or about April 9, 2014 with the same wrongful intent, Defendant Neff enabled
two-step verification on the App Store account in a further effort to prevent Plaintiffs from
accessing the account.  In taking these steps, Defendant Neff acted in concert and conspiracy
with Defendant Perekopsky and the UCP Partner Defendants.  Defendant Neff had no authority
to change the password of the Telegram LLC account with Apple Inc. or to exclude Plaintiffs
from accessing that account.

    51.    Starting no later than April 2, 2014, the Defendants did knowingly, willfully, and
unlawfully, and with intent to execute a scheme and artifice to defraud, commence using a
counterfeit replica of Plaintiffs' mark TELEGRAM in interstate wire communications to identify
the purported origin of messaging client software and services being provided by Defendants
who have no approval from or affiliation with Plaintiffs whatsoever.  Defendants' use of the
TELEGRAM mark in interstate wire communications constitutes fraud and is highly likely to
deceive United States persons as to the origin, affiliation, or sponsorship of products or services
being offered by Defendants.

    52.    The acts of Defendants are each related to each other, and were each committed in
furtherance of Defendants' common scheme to try and coerce Mr. Durov to transfer
TELEGRAM assets to Defendants by extra-legal means.

    53.    Plaintiffs have been injured in their business or property by reason of Defendants'
unlawful and fraudulent acts.  Mr. Durov and Dogged Labs were fraudulently induced to transfer
monies to Digital Fortress LLC in February and March 2014 relying on Defendants Neff and
Perekopsky's undertakings to act on Mr. Durov's behalf, when unbeknownst to Mr. Durov,
Defendant Neff accepted bribes to transfer interests in Digital Fortress LLC, Telegram LLC, and

Pictograph LLC to the UCP Partner Defendants or one or more entities controlled by the UCP Partner Defendants.

54.     Defendants' hijacking of Plaintiffs' account with Apple Inc., through which the iOS version of TELEGRAM (the version whose client software runs on iPhones and other Apple products) is distributed, is preventing Plaintiffs from maintaining and updating that software or controlling the profile and terms on which the software is being distributed through Apple Inc. That hijacking is impacting approximately 30% of TELEGRAM users, who send approximately 40% of all messages over TELEGRAM. Plaintiffs continue to control distribution of the versions of the TELEGRAM App that inter-operate with the Microsoft WINDOWS and Google ANDROID operating systems, which account for approximately 70% of TELEGRAM users, as well as the TELEGRAM host software and systems supporting TELEGRAM message communications from data centers located in the United States, as well as outside the United States. This includes equipment owned by Digital Fortress Corp. and stored in data centers in San Jose, California and Buffalo, New York (which is leased to Digital Fortress LLC).

## PREDICATE ACTS

*Defendants are committing massive ongoing wire fraud through their operation of the App Store in violation of 18 U.S.C. § 1353 (wire fraud) and have changed the password to the App Store in violation of 18 U.S.C. § 1029 (fraud in connection with access devices).*

55.     As described above, Defendant Neff (acting at the behest of other Defendants and in concert with them) changed the password needed to access the TELEGRAM account on the App Store and enabled two-step verification, thus preventing Plaintiffs from accessing the App and App Store, and thereby enabling Defendants to take control of the TELEGRAM App on the App Store computer system for themselves. Defendants have necessarily conveyed the password and other computerized information across state and national boundaries by use of the wires.

-15-

56. After Defendant Neff blocked Plaintiffs from accessing the App Store, the Defendants have continued to permit Apple users (including users in the United States) to download TELEGRAM under false pretenses.

57. The downloads that have occurred following Defendant Neff changing the password on April 2, 2014 are based on fraudulent misrepresentations to the potential users of TELEGRAM on Apple devices. In using the name "TELEGRAM," Defendants are misrepresenting the origin of services that they are providing to the user.

58. Evidence of this ongoing fraud is proven by the fact that the link to the developer website provided at TELEGRAM's App Store directs the user to a website that has a universal resource locator of https://telegram.org. The FAQ section of that website discusses the involvement of Mr. Durov with TELEGRAM. Mr. Durov, however, is not currently affiliated with the App Store because of Defendants' actions.

59. Additionally, individuals who have downloaded TELEGRAM from the App Store have been misled into thinking that they are receiving and will have access to the most current version of the App. Plaintiffs cannot access the TELEGRAM App to update it because Defendants have changed the password to access the App Store.

60. Defendants have violated 18 U.S.C. § 1029 (fraud in connection with access devices) and 18 U.S.C. § 1353 (wire fraud).

***Defendants paid Defendant Neff to violate his duties, in violation of the federal fraud statute (18 U.S.C. §§ 1341 & 1343), the New York commercial bribery statute (N.Y. Penal L. §§ 180.03 & 180.08), the federal money laundering statute (18 U.S.C. § 1956) and the Travel Act (18 U.S.C. § 1952).***

61. Mr. Durov placed his trust in Defendants Neff and Perekopsky to execute his wishes with respect to the formation and operation of the three LLCs and of TELEGRAM in the U.S. He relied on them completely and gave them discretion to act in his best interests, but at all

times, however, Mr. Durov or an entity of his choosing was to be the ultimate beneficial owner
of the LLCs and have full authority and control over all major decisions. Defendants Neff and
Perekopsky were agents and fiduciaries of Mr. Durov and his entities.

62.    The UCP Partner Defendants and Defendant Perekopsky paid Defendant Neff to
act against Mr. Durov's interests. Defendant Sherbovich informed Mr. Durov during their April
2 meeting that he along with Defendants Perekopsky and the other UCP Partner Defendants paid
or caused to be paid a "substantial sum of money" to Defendant Neff to acquire Telegram LLC,
Digital Fortress LLC, and Pictograph LLC.

63.    Defendant Neff necessarily communicated with the other Defendants through
facilities of foreign commerce (such as computers) in connection with the transfer of the three
LLCs as Defendant Neff resides in New York and Defendants Perekopsky, Sherbovich, and
Lazareva reside outside of the United States.

64.    The "substantial sum" that Defendant Neff received necessarily was paid through
facilities of foreign or interstate commerce because Defendant Neff is based in New York State
and Defendants Perekopsky, Sherbovich, and Lazareva are based outside of the United States.

65.    The actions of the Defendants with respect to corruptly influencing Defendant
Neff were designed to deprive Mr. Durov of his intangible right to the honest services of
Defendant Neff. Defendant Perekopsky and the UCP Partner Defendants offered substantial
sums of money to Defendant Neff in order to influence his conduct in relation to the affairs of
Mr. Durov and TELEGRAM.

66.    Mr. Durov never consented, permitted, or acquiesced to Defendant Neff accepting
the benefits he received from the other Defendants.

67.    These actions have caused millions of dollars of economic harm to Plaintiffs.

68.    Defendants' conduct constitutes the fraudulent taking of Mr. Durov's right to honest services (18 U.S.C. §§ 1341 and 1343), commercial bribery under New York Penal Law (Penal Law §§ 180.03 and 180.08), money laundering (18 U.S.C. § 1956), and a violation of the Federal Travel Act (18 U.S.C. § 1952).

**Defendants obtained money from Plaintiffs under false pretenses in violation of the federal fraud statutes (18 U.S.C. § 1343; 18 U.S.C. § 2315).**

69.    Defendant Neff, acting in conjunction with the other Defendants, sought and received funds from Mr. Durov purportedly to acquire equipment for TELEGRAM's operations or to pay outstanding expenses associated with Digital Fortress LLC, Pictograph LLC, and Telegram LLC.

70.    Mr. Durov paid those amounts (through companies that were owned or controlled by him) in reliance on Defendant Neff's promise to act only in the best interest of Mr. Durov and on the understanding that Mr. Durov and whatever companies he designated were and would be the beneficial owners of TELEGRAM, including the assets being contributed to Digital Fortress LLC.

71.    However, Defendant Neff had already decided to breach his obligations and transfer Digital Fortress LLC, Telegram LLC, and Pictograph LLC to the UCP Partner Defendants or one or more entities owned or controlled by the UCP Partner Defendants.  Thus, the payments were solicited and made under false pretenses, in that Mr. Durov understood that the funds were being given to entities that would ultimately benefit Mr. Durov and his successors and assigns, while Defendant Neff and the other Defendants secretly were planning to transfer the three LLCs from Mr. Durov to the UCP Partner Defendants or one or more entities owned or controlled by the UCP Partner Defendants.

72.     Defendant Neff made these communications via computers and telephones, in interstate and international commerce.

73.     By delaying the seizure of the three LLCs, Defendants Neff and Perekopsky and the UCP Partner Defendants were able to fraudulently induce Mr. Durov to contribute (through companies owned or controlled by him) at least an additional $3 million dollars to Digital Fortress LLC and to allow the name TELEGRAM to increase in value in the United States as it became more popular and recognizable due to its association with Mr. Durov's good name and reputation.

74.     Between February 19, 2014 and March 17, 2014, Defendant Neff, at the direction of the above-mentioned Defendants, sent a number of requests to Mr. Durov seeking substantial funds for the Digital Fortress LLC bank account.  For example:

- On February 19, 2014, Defendant Neff sent an email to Mr. Durov requesting that he send $1.6 million to Digital Fortress LLC's bank account to pay suppliers in connection with a server farm.  In order to induce Mr. Durov to contribute money to Digital Fortress LLC, Mr. Neff stated that "the easiest and fastest way to process all the different payments to the various suppliers would be to send the funds to our Digital Fortress US account."  (Exh. 36).

- On February 20, 2014, Defendant Neff sent Mr. Durov an email requesting that he fund $276,500 to Digital Fortress LLC's account in New York to pay an invoice. Mr. Neff specifically stated that Mr. Durov should "send the wire to the Digital Fortress US account and [that he] will process the payment . . ." (Exh. 37).

- On February 21, 2014, Defendant Neff sent Mr. Durov an email requesting that he fund an additional $192,500 to Digital Fortress LLC's account in New York. Defendant Neff requested that Mr. Durov "send payment to the US account and [that he] will process the payments. (Exh. 38).

- On February 23, 2014, Defendant Neff sent Mr. Durov an email requesting that he wire $384,569 to a Digital Fortress LLC vendor.  (Exh. 39).

- On March 17, 2014, Defendant Neff sent Mr. Durov an email requesting that Mr. Durov transfer $733,000 to Digital Fortress LLC's bank account to cover 2014 second quarter expenses.  Defendant Neff attempted to justify this extraordinary demand by stating: "as you know, we are nearing the end of our major expansion efforts.  As a result, the invoices are all out of order, some

haven't been issued yet, and there are multiple invoices due at various times for each data center over the next few weeks. Many of the service addition and installation payments are just being finalized now. Therefore, I'm still working with the data centers to get things organized from a clerical perspective. Until that happens, I will need to work directly with them to handle the payments as they come due for this quarter." (Exh. 40).

75.    At the time Defendant Neff sent these emails, he had already agreed to transfer Digital Fortress LLC, Telegram LLC, and Pictograph LLC to the UCP Partner Defendants or to one or more entities owned or controlled by the UCP Partner Defendants. Defendant Neff's communications with Mr. Durov requesting funds for Digital Fortress LLC's bank account were part of the Defendants' scheme to defraud the Plaintiffs.

76.    Each of the following transfers was made at Defendant Neff's request, based on the false pretense that the funds would be used to benefit TELEGRAM under Mr. Durov's beneficial ownership:

- On February 5, 2014, at Defendant Neff's request, Dogged Labs transferred $200,000 from its account at Credit Suisse AG ("Credit Suisse") to Digital Fortress LLC's account with Bank of America, NA 100 West 33rd Street, New York, New York 10001. Attached as Exhibit 21 is a true and correct copy of the debit advice from Credit Suisse.

- On February 20, 2014, at Defendant Neff's request, Dogged Labs transferred $1,600,000 from its account at Credit Suisse to Digital Fortress LLC's account with Bank of America, NA 100 West 33rd Street, New York, New York 10001. The stated purpose was to fund the "purchase of equipment" for the benefit of TELEGRAM beneficially owned by Mr. Durov. Attached as Exhibit 22 is a true and correct copy of the debit advice from Credit Suisse.

- On February 24, 2014, at Defendant Neff's request, Dogged Labs transferred $470,000 from its account at Credit Suisse to Digital Fortress LLC's account with Bank of America, NA 100 West 33rd Street, New York, New York 10001. Attached as Exhibit 23 is a true and correct copy of the debit advice from Credit Suisse.

- On March 24, 2014, at Defendant Neff's request, Dogged Labs transferred $733,000 from its account at Credit Suisse to Digital Fortress LLC's account with Bank of America, NA 100 West 33rd Street, New York, New York 10001. The stated purpose was to prepay expenses related to renting property in the United States and renting bandwidth in the United States for the benefit of entities

beneficially owned by Mr. Durov as part of TELEGRAM. Attached as Exhibit 24 is a true and correct copy of the debit advice from Credit Suisse.

77.    In total, Defendants defrauded Dogged Labs and Mr. Durov of at least $3 million that was funded to Digital Fortress LLC under the false pretense that these contributions would be for the benefit of the entities beneficially owned by Mr. Durov as part of TELEGRAM or Pictograph LLC.

78.    This conduct violates 18 U.S.C. § 2315 (receipt of stolen money or goods) and 18 U.S.C. § 1343 (wire fraud).

***Defendants sought to extort an interest in TELEGRAM in violation of 18 U.S.C. § 1951 (extortion).***

79.    On or about March 25, 2014, Mr. Durov was contacted via email by Defendant Lazareva, who requested that Mr. Durov attend a meeting on April 2, 2014, with Defendant Sherbovich to discuss some aspects of Mr. Durov's work as CEO of VK. In setting up the meeting, Defendant Lazareva acted under false pretenses, in that the true purpose of the meeting was to attempt to extort 48% of TELEGRAM from Mr. Durov. At this meeting, Defendant Sherbovich (acting in conjunction with the UCP Partner Defendants and on behalf of all Defendants) attempted to force Mr. Durov to give them 48% of the TELEGRAM system worldwide, using the LLCs as leverage.

80.    During the meeting, Defendant Sherbovich presented a written term sheet (Exh. 35 at 4-10) that he insisted Mr. Durov sign immediately. In essence, Defendant Sherbovich demanded that Mr. Durov give up 48% of the worldwide TELEGRAM system, in exchange for getting back 52% of the three LLCs that Defendants improperly possessed. Mechanically, the term sheet provided that UCP would receive a 48% interest in the TELEGRAM business worldwide in consideration for having "all assets of UCP Telegram Entities [which the term sheet defines as Digital Fortress LLC, Pictograph LLC, and Telegram LLC] transferred to

NewCo, exclusive of any liabilities..." The Term Sheet was executed by UCP PF Limited, a British Virgin Islands entity controlled by the UCP Partner Defendants.

81.     Mr. Durov never consented to or agreed to have the three LLCs transferred to the Defendants. Defendants have no claim of right to the property that they sought to extort from Mr. Durov.

82.     In March 2013, UCP bought 48% of VKontakte, which was done secretly from Mr. Durov and the other shareholder of VKontakte (Mail.ru) who learned about the sale from the press. This happened despite the fact that Mr. Durov and Mail.ru were entitled to a right of first refusal.

83.     Defendants tried to keep their extortionate plan secret from VK and its other shareholders. Defendant Sherbovich told Mr. Durov that UCP's acquisition of 48% of the worldwide TELEGRAM system could be done without VK or the other shareholder of VK (Mail.ru) knowing about the transaction. Defendant Sherbovich invited Defendant Kachuro into the meeting, and asked him to confirm that the transaction could be kept a secret. Defendant Kachuro responded that the transaction could be consummated without Mail.ru's knowledge. Defendant Sherbovich reassured Mr. Durov that VK and Mail.ru would not learn about the "deal."

84.     The extortion is documented in the letter Mr. Sherbovich sent via the wires on April 2, which includes a copy of the term sheet he gave Mr. Durov at that meeting. (Exh. 35).

85.     Defendants used the threat of economic loss to seek to extort a minority (but controlling) interest in the worldwide TELEGRAM business.   Not only did Defendants wrongfully seize the LLCs, but they used those illegally obtained assets to obtain control over the App Store password. As a result, Defendants now wrongfully have control over the price for

the App, the users who can or cannot use the App, the public description of the App, and even over whether the App is withdrawn and a new App substituted. Defendants also illegally obtained apparent control over TELEGRAM's U.S. trademark applications, putting even the WINDOWS and ANDROID TELEGRAM Apps at risk. Defendants threatened never to return Digital Fortress LLC, Telegram LLC, and Pictograph LLC to their rightful owner unless a 48% interest in the worldwide TELEGRAM system was transferred to them.

86.    In seeking to extort a 48% interest in the worldwide TELEGRAM system, the Defendants would gain interests in physical assets located within the United States, including two server farms located in the United States: one located in Buffalo, New York and another in San Jose, California.

87.    Defendants' conduct has violated 18 U.S.C. § 1951 (extortion).

## CAUSES OF ACTION

### First Cause of Action:
### (Federal Civil RICO, 18 U.S.C. § 1962(c))
### Against All Defendants

88.    Paragraphs 1 to 87 are incorporated as if fully set forth herein. The conduct of Defendants alleged violates 18 U.S.C. § 1962(c).

89.    18 U.S.C. § 1962(c) makes it unlawful to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. Defendants violated this statute, and as a result, Plaintiffs were injured.

90.    Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

91.    Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

92.    The Enterprise.  Digital Fortress LLC, Telegram LLC, and Pictograph LLC are legal entities within the meaning of 18 U.S.C. § 1961(4), and constitute one or more enterprises within the meaning of the RICO statute.

93.    Beginning at a time currently unknown to Plaintiffs, but not later than January 2014, the UCP Partner Defendants and Defendant Perekopsky became associated with the LLCs. At all relevant times, Defendant Neff was an employee of the LLCs and associated with the LLCs.

94.    Beginning at a time currently unknown to Plaintiffs, but not later than January 2014, the UCP Partner Defendants and Defendants Neff and Perekopsky participated in the conduct of the affairs of Digital Fortress LLC, Telegram LLC, and Pictograph LLC through a pattern of racketeering activity in United States or foreign commerce as described in this complaint.

95.    In addition or in the alternative, the UCP Partner Defendants and Defendants Neff and Perekopsky together formed an association-in-fact enterprise with a common and continuing purpose, constituting an enterprise within the meaning of 18 U.S.C. § 1961(4).  The members of the enterprise functioned as a continuing unit that shared and continues to share a common purpose and relationship.  The purpose of the association-in-fact enterprise is described in this complaint, and includes controlling on an ongoing basis the worldwide distribution of the iOS version of TELEGRAM App (including controlling which subscribers have or do not have access, the price subscribers pay for the App, how the App is publicly described, whether the App remains available or is withdrawn and a new App substituted, and preventing Plaintiffs from updating the iOS version of the App); using a counterfeit replica of Plaintiffs' TELEGRAM mark to identify the purported origin of services and computer programs being provided by

Defendants to end users without Plaintiffs' authorization or control; controlling the development and use distribution of the Pictograph App on an ongoing basis; threatening and actually causing harm to Plaintiffs by creating confusion among TELEGRAM users, damaging the Plaintiffs' goodwill and reputation; and attempting through extortionate and other illegal means to obtain control of the TELEGRAM system worldwide and then to maintain that control in perpetuity all in violation of federal and state laws.

96.    After the UCP Partner Defendants and Defendants Neff and Perekopsky seized control of the LLCs, they caused the LLCs to join the association-in-fact enterprise. The UCP Partner Defendants and Defendants Neff and Perekopsky are the persons conducting the affairs of Digital Fortress LLC, Telegram LLC, and Pictograph LLC through a pattern of racketeering activity.

97.    In addition or in the alternative, UCP and its affiliated entities (including John Does 1-3) are legal entities within the meaning of 18 U.S.C. § 1961(4), and constitute one or more enterprises within the meaning of the RICO statute.

98.    Defendants Sherbovich, Lazareva, and Kachuro have been employed by UCP during all relevant times described herein. Beginning at a time currently unknown to Plaintiffs, but not later than January 2014, Defendants Neff and Perekopsky became associated with UCP.

99.    Beginning at a time currently unknown to Plaintiffs, but not later than January 2014, the UCP Partner Defendants and Defendants Neff and Perekopsky participated in the conduct of the affairs of UCP through a pattern of racketeering activity in United States or foreign commerce as described in this complaint.

100.    The enterprises described herein have engaged in, and its activities have affected, foreign and interstate commerce.

101.    <u>Pattern of Racketeering Activity</u>. Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.

102.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1). Defendants each committed at least two such acts or else aided and abetted such acts.

103.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission.

104.    <u>Predicate Act: Use of Wires to Defraud Plaintiffs in Violation of 18 U.S.C. § 1343</u>. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 in that they devised a scheme to defraud Plaintiffs and to obtain money or property from Plaintiffs by means of false or fraudulent pretenses, representations, or promises. Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals in furtherance of this fraud. Defendants' acts were done with knowledge that the use of the wires would follow in the ordinary course. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

105.    Defendants carried out their scheme in different states and countries and could not have done so unless they used wires in interstate or foreign commerce. In furtherance of their scheme, Defendants communicated among themselves and with Mr. Durov as well as with

representatives and agents of the Plaintiffs. These communications were typically transmitted by wire (*i.e.*, electronically through computer or text messages).

106.    Among other things, Defendant Neff used the wires to obtain wire transfers from Dogged Labs in excess of $3 million at a time that he knew he was going to transfer the three LLCs to the UCP Partner Defendants.

107.    Additionally, the UCP Partner Defendants and Defendant Perekopsky devised a scheme to deprive Plaintiffs of the intangible right to the honest and faithful services of Defendant Neff. The above-mentioned Defendants bribed Defendant Neff to betray the trust and confidence that Mr. Durov placed in him and to abuse the discretion he afforded Defendant Neff. Furthermore, Defendant Neff concealed activity related to those kickbacks from Mr. Durov. Defendant Neff participated in the scheme with knowledge of its fraudulent nature and with the intent to defraud Plaintiffs. As part of that scheme, Defendants used or caused the use of wires.

108.    Defendant Neff, at the behest and for the benefit of other Defendants, used the wires to change the password to the TELEGRAM App Store without authorization or approval from Mr. Durov. Since the time the password was changed on April 2, Defendants have operated the TELEGRAM App Store and in so doing have consummated at a minimum hundreds of fraudulent downloads a day as they have misrepresented the origin of services being offered to potential users of TELEGRAM on Apple devices in the United States.

109.    Plaintiffs have been damaged as a direct and proximate result of Defendants' participation in such enterprise.

110.    <u>Predicate Act: Receipt of Stolen Money and Goods in Violation of 18 U.S.C. § 2315.</u> Defendants' actions constituted acts indictable under 18 U.S.C. § 2315 in that having devised or intended to devise a scheme or artifice to defraud Plaintiffs or to obtain money, goods,

or securities from Plaintiffs by false or fraudulent pretenses, representations or promises, they received money, goods, or securities in excess of $5000, which crossed a State or United States boundary after being stolen, unlawfully converted, or taken.

111.    Among other things, Defendants received at least $3 million in cash that was taken by fraud.

112.    The acts of Defendants were done willfully and with knowledge that the money was stolen, unlawfully converted, or taken.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

113.    <u>Predicate Act:  Use of Any Facility of Foreign or Interstate Commerce to Defraud in Violation of 18 U.S.C. § 1952 ("Travel Act")</u>.  Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1952 in that, Defendants used facilities of interstate and foreign commerce in order to promote, manage, and facilitate the continuation of their scheme. Among other things, Defendants used means of interstate and foreign commerce to engage in commercial bribery, extortion, and to violate the federal money laundering statute.

114.    In connection with the predicate acts of commercial bribery and money laundering, Defendant Sherbovich reported that Defendant Neff was paid or caused to be paid a "substantial sum" by the UCP Partner Defendants and Defendant Perekopsky to illicitly sell Digital Fortress LLC, Telegram LLC, and Pictograph LLC.  Given that Defendant Neff is a resident of New York State and that Defendants Perekopsky, Sherbovich, and Lazareva are located outside of the United States, the payment of that "substantial sum" of money necessarily involved the facilities of interstate or foreign commerce, as would any communication between Defendant Neff and any of the other Defendants.

-28-

115.    Additionally, the Defendants used facilities of interstate and foreign commerce in seeking to extort a 48% interest in the TELEGRAM system from Mr. Durov. Among other things, the Defendants used means of interstate and foreign commerce to bribe Defendant Neff thus enabling the Defendants to seize control of the LLCs and used the means of interstate wires to obtain control over the TELEGRAM App Store and the password to access the App Store.

116.    These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

117.    Plaintiffs have been damaged as a direct and proximate result of Defendants' use of the facilities of interstate and foreign commerce for the purposes of promoting, managing, and facilitating the continuation of their scheme.

118.    <u>Predicate Act:  Fraud in Connection with Access Devices in Violation of 18 U.S.C. § 1029</u>.  Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1029 in that, among other things, Defendants, having devised a scheme to defraud Plaintiffs, knowingly and with the intent to defraud used or trafficked in an unauthorized access device and that in so doing obtained things of value aggregating more than $1,000 and Defendants knowingly and with intent to defraud used or trafficked in one or more counterfeit access devices.

119.    The password to TELEGRAM's App Store is an access device within the meaning of 18 U.S.C. § 1029 as it is a means of account access that enabled the possessor to exercise control over the distribution of the TELEGRAM App through Apple.

120.    On April 2, 2014, three hours after the meeting between Defendant Sherbovich and Mr. Durov, Defendant Neff changed the password to the TELEGRAM App Store to block

its rightful owner from accessing the TELEGRAM account. The password to the TELEGRAM App Store was changed with the intent to defraud Plaintiffs.

121. Given the size of TELEGRAM, with 15 million daily unique users and over 35 million unique users, control of this distribution channel is a thing of value far in excess of the statutory requirement of $1,000. The unauthorized access device was used in this case to change the password to the App Store, thereby obtaining valuable assets, including, but not limited to, the power to control the distribution of the TELEGRAM App through the App Store and preventing Plaintiffs from accessing the App Store.

122. On April 9, 2014, Defendant Neff used the new altered password that was generated on April 2 to enable a two-step verification process to access the TELEGRAM App Store account.

123. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

124. Defendant Neff agreed with Digital Fortress LLC, Telegram LLC, Defendant Perekopsky, and the UCP Partner Defendants to violate 18 U.S.C. § 1029 by taking the actions described in this complaint. These defendants knowingly worked in concert with the specific intent to take control over the TELEGRAM App Store and prevent Plaintiffs from accessing the App Store. In furtherance of this conspiracy, Defendant Neff, at the direction of Digital Fortress LLC and Telegram LLC, Defendant Perekopsky, and the UCP Partner Defendants, changed the password to TELEGRAM App Store and then used the altered password to enable two-step verification.

125. The access device at issue here was issued by Apple Inc. and managed by Telegram LLC and Defendant Neff under the laws of Delaware, on behalf of Plaintiffs. Articles

-30-

used to assist in the commission of these offenses as well as the property derived from the offenses are located within the jurisdiction of the United States.

126.    Plaintiffs have been damaged as a direct and proximate result of Defendants' use and/or trafficking in of unauthorized and/or counterfeit access devices.

127.    <u>Predicate Act:  Commercial Bribery of Defendant Neff under New York Penal Law §§ 180.03 and 180.8.</u> Defendant Perekopsky and the UCP Partner Defendants have committed an indictable offense under New York Penal Law § 180.03 insofar as they conferred, or agreed to confer, a monetary benefit that is greater than $1,000 upon Defendant Neff.  Among other things, Defendant Sherbovich informed Mr. Durov on April 2, 2014 that Defendant Perekopsky and the UCP Partner Defendants paid or caused to be paid a substantial sum of money to Defendant Neff to acquire the three LLCs.  Defendant Neff never received permission or consent from Mr. Durov to receive this money.  Mr. Neff was an agent and fiduciary to Mr. Durov in connection with the establishment and operation of the three LLCs in the United States.  The reason Defendant Perekopsky and the UCP Partner Defendants were interested in paying Defendant Neff was due to his ability to exploit the discretion, trust, and reliance that Mr. Durov placed in him.  These actions have caused Plaintiffs to suffer economic harm in an amount greater than $250 as, at a minimum, Plaintiffs contributed over $3 million to the LLCs based on the fraudulent representations of Defendant Neff.

128.    Given the conduct set forth in the immediately preceding paragraph, Defendant Neff has committed an indictable offense of receiving a commercial bribe under New York Penal Law § 180.08.

129.    These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

130.    Plaintiffs have been damaged as a direct and proximate result of this commercial bribery.

131.    <u>Predicate Act: Money Laundering in Violation of 18 U.S.C. § 1956</u>.  Defendant Perekopsky and the UCP Partner Defendants committed an indictable offense of money laundering under 18 U.S.C. § 1956.  The above-named defendants transferred and transmitted to Defendant Neff in New York from places outside the United States funds with the intent to promote the carrying on of specified unlawful activity within the meaning of Section 1956(c)(7), including among other things, commercial bribery, wire fraud, and extortion.

132.    Defendants Sherbovich informed Mr. Durov that Defendant Neff was paid a substantial sum of money to transfer the LLCs.  The substantial sum of money that Mr. Neff received was in excess of $10,000.

133.    Defendant Neff committed an indictable offense of money laundering under 18 U.S.C. § 1956.  Defendant Neff caused Mr. Durov and Dogged Labs to transfer money from outside of the United States to Digital Fortress LLC's bank account in New York with the intent to promote the carrying on of specified unlawful activity within the meaning of Section 1956(c)(7), including among other things, commercial bribery, wire fraud, and extortion.

134.    Each of the wire transfers set forth in paragraph 76 was a "financial transaction" within the meaning of 1956(c)(4) and are in excess of $10,000.  Moreover, Defendant Neff knew within the meaning of Section 1956(c)(1) that the transactions were the proceeds of Defendants' criminal acts.

135.    <u>Predicate Act: Extortion in Violation of 18 U.S.C. § 1951</u>. Defendants have committed an indictable offense of extortion under 18 U.S.C. § 1951.  Defendants sought to take from Mr. Durov a 48% stake in the worldwide TELEGRAM business, in which they have no

legitimate claim of interest, through the fear of economic loss, including by blocking Plaintiffs from distributing TELEGRAM through the App Store, seizing and then maintaining control of the three LLCs, taking control of the pending trademark applications, and purporting to prevent TELEGRAM from acting under that name in the United States. Due to Defendants' actions, interstate and foreign commerce was obstructed, delayed, or affected.

136.    These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

137.    Plaintiffs have been damaged as a direct and proximate result of this attempted extortion.

138.    <u>Continuity of Conduct</u>. Defendants' violations of state and federal laws as set forth herein, each of which directly and proximately injured Plaintiffs and the worldwide users of TELEGRAM, demonstrates a course of conduct spanning a period of time beginning no later than the end of January 2014 through the present and that will continue into the indefinite future with no stopping point. Among other things, Defendants are using a counterfeit replica of Plaintiffs' TELEGRAM mark to identify the purported origin of services and computer programs being provided by Defendants to end users without Plaintiffs' authorization or control, illegally controlling on an ongoing basis the worldwide distribution of the iOS version of the TELEGRAM App (including controlling which subscribers have or do not have access, the price subscribers pay for the App, how the App is publicly described, and whether the App remains available or is withdrawn and a new App substituted), preventing this version of the App from being updated, creating confusion among users, and damaging the Plaintiffs' goodwill and reputation due to Defendants' control over the iOS version and Plaintiffs' control over the Google ANDROID and WINDOWS version. Moreover, Defendants have gained control over

the development and distribution of the Pictograph App on an ongoing basis. Defendants are also seeking to extort a controlling interest in the entire TELEGRAM system and with it obtain the ability to control the TELEGRAM system into perpetuity.

139.    The Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined here in violation of 18 U.S.C. § 1962(c).

140.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused injuries to Plaintiffs and continue to cause injuries to Plaintiffs in their business or property.

### Second Cause of Action:
### (Federal Civil Rico, 18 U.S.C. § 1962(b))
### Against All Defendants

141.    Paragraphs 1 to 140 are incorporated as if fully set forth herein.

142.    18 U.S.C. § 1962(b) makes it unlawful to acquire or maintain, via a pattern of racketeering activity, any interest in or control of any enterprise engaged in or affecting interstate or foreign commerce.

143.    Digital Fortress LLC, Telegram LLC, and Pictograph LLC are each legal entities within the meaning of 18 U.S.C. § 1961(4). Digital Fortress LLC, Telegram LLC, and Pictograph LLC are either engaged in interstate or foreign commerce or undertake or caused activities to be undertaken that affect interstate or foreign commerce.

144.    Defendants Perekopsky and Neff and the UCP Partner Defendants acquired control over and maintained control over Digital Fortress LLC, Telegram LLC, and Pictograph LLC through a pattern of racketeering activity, as described in greater detail above. Among other predicate acts, the Defendants were able to obtain control of the LLCs by the commission

of crimes such as commercial bribery, wire fraud, money laundering, receipt of stolen money or goods, and use of interstate or foreign facilities to further the commercial bribery.

145.    The elements of Section 1962(c) that are in common with Section 1962(b) are satisfied, as described above in the First Cause of Action.

146.    Plaintiffs have sustained an "acquisition injury" that is separate and distinct from the harm caused by the RICO predicate acts.  As a result of the acquisition of an interest in the three LLCs by the UCP Partner Defendants and Defendants Neff and Perekopsky, Plaintiffs are harmed by (among other things) having competing messenger products using the TELEGRAM mark and the UCP Partner Defendants' use of the LLCs as leverage in an extortionate effort to obtain control over the entire TELEGRAM system.  Plaintiffs are also deprived of their right to control the further development and distribution of the Pictograph App.

### Third Cause of Action:
### (Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d)) Against All Defendants

147.    Paragraphs 1 to 146 are incorporated as if fully set forth herein.

148.    18 U.S.C. § 1962(d) makes it unlawful to conspire to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity.

149.    In violation of 18 U.S.C. § 1962(d), the Defendants, and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering.

150.    The conspiracy commenced no later than late January 2014 and is still ongoing.  Among other things, the Defendants conspired to conduct the affairs of Telegram LLC, Digital Fortress LLC, and Pictograph LLC through the above-described pattern of racketeering activity.

151.    The purpose of the acts each Defendant agreed to engage in was to advance the overall object of the conspiracy, including (1) to operate the TELEGRAM iOS App on an

ongoing basis, (2) to control distribution of the TELEGRAM App to Apple users on an ongoing basis, (3) to use a counterfeit replica of Plaintiffs' TELEGRAM mark to identify the purported origin of services and computer programs provided by Defendants to end users without Plaintiffs' authorization or control, (4) to control the affairs of Telegram LLC, Digital Fortress LLC, and Pictograph LLC without authorization, and (5) to use their control of the LLCs and the trademark to obtain control over the entire TELEGRAM system and the Pictograph App, which they would then operate and control in perpetuity.  Harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' actions.

152.    Plaintiffs have been injured in their business and property in violation of 18 U.S.C. § 1962(d).  The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused injuries to Plaintiffs in their business or property.

### Fourth Cause of Action:
### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030)
### Against Defendants Neff, Perekopsky,
### Sherbovich, Lazareva, Kachuro, UCP, and John Does 1-3

153.    Paragraphs 1 to 152 are incorporated as if fully set forth herein.

154.    Mr. Durov owned and continues to own protected computers including associated communication facilities, including the password associated with access to the TELEGRAM App on the App Store and the computers on which it resides and for which it provides access, that are used in interstate and/or foreign commerce.  Additionally, Apple Inc. owns and continues to own protected computers that are used in interstate and/or foreign commerce in connection with the Apple App Store.

155.    Defendants knowingly, willfully, and intentionally accessed protected computers owned by Mr. Durov or Apple Inc. without authorization and/or in a manner that exceeded authorized access.

156.     In accessing and changing the password to the App Store, Defendant Neff exceeded the scope of his authorized use from Mr. Durov.  Similarly, in enabling two-step verification to access the App Store account Defendant Neff exceeded the scope of his authorized use from Mr. Durov.

157.     In taking these actions, Defendant Neff obtained control of the App Store and the password of the App Store and transferred control of the password through which the App Store could be accessed to himself, Defendant Perekopsky, and the UCP Partner Defendants. Defendant Neff's actions affected interstate or foreign commerce.

158.     Defendants never received permission from Mr. Durov to change the password to TELEGRAM's App Store account or to enable two-step verification to access the App Store.

159.     Defendants never received permission to transfer confidential information maintained on computers belonging to Mr. Durov or Apple Inc.

160.     Defendants' intention in accessing Mr. Durov's computers was to defraud Mr. Durov and potential Apple TELEGRAM users in the United States.

161.     The actions of Defendant Neff violated the fiduciary duties he owed to Mr. Durov.

162.     Defendant Neff exceeded his authorized use in accessing Apple's data centers, thereby enabling the UCP Partner Defendants and Defendants Neff and Perekopsky to obtain information from protected computers and allowing them to obtain control of TELEGRAM's valuable App Store.

163.     The UCP Partner Defendants and Defendants Neff and Perekopsky have used their control over the password and the App Store as part of their attempt to extort a 48% interest in the worldwide TELEGRAM system.

164.    Defendants' actions have already caused loss in excess of $5,000 due to the unavailability of data, files, programs, systems, and the entire TELEGRAM App Store to its rightful owner—Plaintiffs.

165.    Defendants' actions have already cost Plaintiffs over $5,000 in remedial measures, including assessing the damage and attempting to restore access to TELEGRAM's App Store.

### Fifth Cause of Action:
### (Commercial Bribery under 15 U.S.C. § 13)
### Against Defendants Neff, Perekopsky,
### Sherbovich, Lazareva, Kachuro, UCP, and John Does 1-3

166.    Paragraphs 1 to 165 are incorporated as if fully set forth herein.

167.    Despite his responsibility as a fiduciary and agent of Mr. Durov, Defendant Neff received "a substantial sum of money" from the UCP Partner Defendants and Defendant Perekopsky in exchange for transferring control of the three LLCs to the UCP Partner Defendants or one or more entities controlled by them.

168.    The sum of money provided to Defendant Neff was of significant value, and was not provided in connection with the sale or purchase of any goods.  In fact, Defendant was paid solely in order to effectuate the UCP Partner Defendants' usurpation of Mr. Durov's ownership interest in the three LLCs.

169.    The UCP Partner Defendants and Defendants Neff and Perekopsky were, or should have been, fully aware that Defendant Neff was a fiduciary of Mr. Durov and was acting as an agent of the Plaintiffs.

170.    The UCP Partner Defendants willingly did not negotiate or provide for any payments with Mr. Durov in order to purchase a transfer of control of the three LLCs, and instead made their payment to Defendant Neff in order to effectuate their scheme.  Mr. Durov

never consented, permitted, or acquiesced in allowing Defendant Neff to accept the benefits he received from Defendant Perekopsky and the UCP Partner Defendants.

171.    As a result of these actions, Mr. Durov was never provided a good faith offer for control of the three LLCs, and instead, had his ownership stake illegally sold by his own fiduciary.

172.    Defendants' conduct constitutes commercial bribery pursuant to 15 U.S.C. § 13(c).

### Sixth Cause of Action:
### (Breach of Fiduciary Duty)
### Against Defendant Neff

173.    Paragraphs 1 to 172 are incorporated as if fully set forth herein.

174.    Defendant Neff owed fiduciary duties of loyalty and care to Mr. Durov. Defendant Neff agreed to act as Mr. Durov's agent and fiduciary in establishing Digital Fortress LLC, Telegram LLC, and Pictograph LLC in the United States. Mr. Neff understood that at all times Mr. Durov and his successors and assigns were to be the beneficial owners of the three LLCs. In making this agreement, Mr. Durov placed his confidence in Defendant Neff and relied on Defendant Neff's superior knowledge of U.S. corporate structure to establish the appropriate entity to carry out Mr. Durov's directives.

175.    As a fiduciary, Defendant Neff was required to exercise the utmost good faith and undivided loyalty in the performance of his duties.

176.    Defendant Neff breached his fiduciary duties of loyalty and care by transferring the three LLCs to the UCP Partner Defendants or one or more entities controlled by them, and by obtaining payments from Plaintiffs for the three LLCs under false pretenses.

177.    As a direct and proximate result of the wrongful conduct of Defendant Neff, Mr. Durov suffered and will continue to suffer substantial damages.

***Seventh Cause of Action:***
***(Aiding and Abetting a Breach of Fiduciary Duty)***
***Against Defendants Perekopsky, Sherbovich,***
***Lazareva, Kachuro, UCP, and John Does 1-3***

178.    Paragraphs 1 to 177 are incorporated as if fully set forth herein.

179.    Defendant Perekopsky and the UCP Partner Defendants knowingly participated and assisted in the breach of fiduciary duty.

180.    The above-referenced Defendants paid or caused Defendant Neff to receive a substantial sum of money in exchange for him illicitly transferring control of the three LLCs to the UCP Partner Defendants, and induced and participated with Defendant Neff to transfer the three LLCs to an entity under their control.

181.    Defendant Perekopsky was paid, or was promised to be paid, approximately four million British Pounds for helping the other Defendants to act against Mr. Durov's interests.

182.    These actions deprived Mr. Durov of ownership of Telegram LLC, Digital Fortress LLC, and Pictograph LLC and the ability to oversee and control their actions, including but not limited to, giving themselves control over the App Store account and the TELEGRAM mark.

183.    As a direct and proximate result of the wrongful conduct of Defendant Perekopsky and the UCP Partner Defendants, Mr. Durov has suffered and will continue to suffer substantial injuries.

***Eighth Cause of Action:***
***(Breach of Contract)***
***Against Defendant Neff***

184.    Paragraphs 1 to 183 are incorporated as if fully set forth herein.

185.    Mr. Durov agreed with Defendant Neff that Defendant Neff would assist him in the TELEGRAM project and his other independent ventures by handling the creation of entities

based in the United States, including Digital Fortress LLC, Telegram LLC, and Pictograph LLC. Mr. Durov was explicit that he was to be the beneficial owner of the entities that were to be established.

186.   Mr. Durov agreed that Defendant Neff could serve as the manager and nominal owner of the three LLCs, subject to Mr. Durov's rights to make all material decisions and approve all actions outside the ordinary course of business, including, but not limited to, any and all transfers.

187.   Mr. Durov was the third-party beneficiary of an agreement between Defendants Neff and Perekopsky relating to the establishment of the three LLCs and Defendant Neff's status as manager and nominal record owner, under which Mr. Durov was be the beneficial owner and had the right to make all material decisions and approve all actions outside the ordinary course of business, including, but not limited to, any and all transfers.

188.   Defendant Neff breached these agreements by transferring the three LLCs to the UCP Partner Defendants or one or more entities controlled by them.

189.   The actions of Defendant Neff have deprived Mr. Durov of the ownership interest in the three LLCs and the ability to oversee and control their actions.

### Ninth Cause of Action:
### (Tortious Interference with Contract)
### Against Defendants Perekopsky, Sherbovich,
### Lazareva, Kachuro, UCP, and John Does 1-3

190.   Paragraphs 1 to 189 are incorporated as if fully set forth herein.

191.   Defendant Perekopsky and the UCP Partner Defendants intentionally sought and procured the breach of Defendant Neff's contracts with Mr. Durov and Defendant Perekopsky.

192.   These Defendants were aware of these contractual relationships, and offered Defendant Neff a substantial sum of money to breach these agreements and take steps that were

designed to injure Mr. Durov and his successors and assigns. Defendant Neff transferred the three LLCs to the control of the UCP Partner Defendants because the UCP Partner Defendants and Defendant Perekopsky offered him a "substantial sum of money" to do so.

193.    Defendant Perekopsky was paid, or was promised to be paid, approximately four million British Pounds for helping the other Defendants to act against Mr. Durov's interests.

194.    The actions of these Defendants have deprived Mr. Durov of the ownership interest in Digital Fortress LLC, Telegram LLC, and Pictograph LLC and the ability to oversee and control their actions.

## Tenth Cause of Action:
## (Conversion)
## Against all Defendants

195.    Paragraphs 1 to 194 are incorporated as if fully set forth herein.

196.    Defendants have converted property that belongs to Plaintiffs, including the beneficial ownership and control of the three LLCs, pending trademark applications in the U.S., the ability to access TELEGRAM's App Store, and the money that was transferred to the LLCs.

197.    Mr. Durov is the beneficial owner of the three LLCs and has an immediate right of possession in those entities as well as the assets of those entities, such as the pending trademark application and the ability to access TELEGRAM's App Store.

198.    The actions of these Defendants have deprived Mr. Durov of the ownership interest in the three LLCs and their assets and allowed Defendants to abscond with over $3 million invested by Plaintiffs in the LLCs.

## Eleventh Cause of Action:
## (Declaratory Judgment, 28 U.S.C. § 2201)
## Against All Defendants

199.    Paragraphs 1 to 198 are incorporated as if fully set forth herein.

200.    A ripe and justiciable controversy exists between Mr. Durov and the Defendants regarding who is the owner of Digital Fortress LLC, Telegram LLC, Pictograph LLC, and the TELEGRAM mark.

201.    Mr. Durov had an agreement with Defendants Neff and Perekopsky regarding the establishment of the three LLCs.  As part of that agreement, Defendants Neff and Perekopsky always understood that, whatever the precise corporate formality that was chosen, Mr. Durov was to be the beneficial owner of the entities that were established, and of the TELEGRAM mark.

202.    Notwithstanding this agreement, Defendant Neff transferred the three LLCs to the UCP Partner Defendants or one or more entities controlled by them in exchange for a "substantial sum of money."  The UCP Partner Defendants and their affiliates now claim that they are the owners of the three LLCs, and have used that fraudulent interest to take actions to block the rightful owner from exercising authority over these entities and their operations.

203.    Plaintiffs have no adequate remedy at law.  Only through the exercise of this Court's equitable power can Plaintiffs be protected from the immediate and irreparable injury caused by the fact that the UCP Partner Defendants and their affiliated entities claim to be the owner of the three LLCs and the TELEGRAM mark.

204.    Based upon the foregoing, pursuant to 18 U.S.C. § 2201, this Court should issue a declaratory judgment that Mr. Durov is the lawful owner of Digital Fortress LLC, Telegram LLC, and Pictograph LLC, and of the TELEGRAM mark.

*Twelfth Cause of Action:*
*(Constructive Trust)*
*Against all Defendants*

205.    Paragraphs 1 to 204 are incorporated as if fully set forth herein.

206.    Mr. Durov placed his confidence in Defendants Neff and Perekopsky regarding the establishment of Digital Fortress LLC, Telegram LLC, and Pictograph LLC in the United States.

207.    Based on the fiduciary relationship he had with Defendant Neff, Mr. Durov relied on his advice in establishing the three LLCs.  Defendant Neff never informed Mr. Durov that the structure he had chosen would allow him to transfer the three LLCs without Mr. Durov's approval or consent.

208.    Based on his trust in Defendants Neff and Perekopsky's knowledge and judgment, Mr. Durov agreed with their recommendation to form entities based in the United States and that Defendant Neff would serve as his nominee.

209.    As a result of the actions Defendant Neff, the UCP Partner Defendants and their affiliated entities have illegally seized property in which they have no interest and deprived Mr. Durov of property that he owned or contributed to the three LLCs.

210.    Accordingly, the imposition of a constructive trust to prevent the Defendants from being unjustly enriched is appropriate in this case.

### Thirteenth Cause of Action:
### (Unfair Competition)
### Against all Defendants

211.    Paragraphs 1 to 210 are incorporated as if fully set forth herein.

212.    Through considerable time, effort, and skill, Mr. Durov has developed TELEGRAM's goodwill, reputation, the value of the TELEGRAM name, its assets and resources, and its broad user-base.

213.    By exploiting Defendant Neff's violation of his fiduciary duties to Mr. Durov, the UCP Partner Defendants have taken control of the three LLCs from Plaintiffs and prevented proper exercise of control of the three LLCs by Mr. Durov.

214.    The Defendants have also changed the password to the App Store account in an effort to prevent Plaintiffs from being able to access the account.

215.    The Defendants have continued to allow Apple users to download the TELEGRAM App, perpetrating a fraud on prospective users of TELEGRAM as Mr. Durov no longer is affiliated with the product available to be downloaded at the App Store and Plaintiffs cannot update the software behind the App.

216.    As a result of Defendants' actions, Mr. Durov has lost the ability to access or control the App Store account, as well as his ownership interest in the LLCs.

217.    This conduct constitutes unfair competition under New York law.

218.    Defendants' actions have cost Plaintiffs millions in damages.

### Fourteenth Cause of Action:
### (Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349)
### Against all Defendants

219.    Paragraphs 1 to 218 are incorporated as if fully set forth herein.

220.    Defendant Neff, at the behest of the other Defendants, has changed the password to App Store account, giving themselves control over the App Store account and depriving Mr. Durov of proper access to TELEGRAM, and transferred the three LLCs to the control of the UCP Partner Defendants.

221.    Prospective users of TELEGRAM on Apple products in the United States have downloaded the application based upon the misleading belief perpetuated by Defendants that Mr. Durov is currently affiliated with those products.

222.    Defendants have knowingly allowed and perpetuated this misleading belief because Defendants have not changed the App Store page for TELEGRAM to reflect the fact that they and not Mr. Durov are now affiliated with the availability of TELEGRAM through the App Store.

-45-

223.    Since April 2, 2014, **at least a minimum of thousands of users** in the United States have downloaded TELEGRAM based on the impression that it is associated with Mr. Durov.

224.    As a result, Mr. Durov faces severe damage from the misappropriation of goodwill and trusted reputation as the owner of TELEGRAM's operations in the United States, and Defendants' misrepresentations to the public.

*Fifteenth Cause of Action:*
*(False Advertising, N.Y. Gen. Bus. Law § 350)*
*Against all Defendants*

225.    Paragraphs 1 to 224 are incorporated as if fully set forth herein.

226.    In maintaining the operations of TELEGRAM's App Store following the changing of the password on April, 2014, Defendants have committed false advertising.

227.    Defendants have failed to remove from the App Store the link to the developer's website (which describes the role of Mr. Durov in relation to TELEGRAM). This link is designed to provide potential users with information about the product and answer questions a potential user may have.

228.    Although Mr. Durov is not currently affiliated with the entities distributing TELEGRAM through the App Store, he is still prominently featured on the developer's website. The Defendants have not removed that link and as such are misleading potential users about the involvement of Mr. Durov in the distribution of TELEGRAM through the App Store.

229.    As a result, Mr. Durov faces severe damage from the misappropriation of goodwill and trusted reputation as the owner of TELEGRAM's operations in the United States, and Defendants' misrepresentations to the public.

*Sixteenth Cause of Action:*
*(False Designation of Origin and Descriptions, 15 U.S.C. § 1125(a))*
*Against all Defendants*

230.    Paragraphs 1 to 229 are incorporated as if fully set forth herein.

231.    The conduct of Defendants alleged herein violates 15 U.S.C. § 1125(a).

232.    Defendants are liable to Plaintiffs, jointly and severally, for compensatory

damages and injunctive relief under 15 U.S.C. §§ 1116 and 1117.

*Seventeenth Cause of Action*
*(Unjust Enrichment)*
*Against all Defendants*

233.    Paragraphs 1 to 232 are incorporated as if fully set forth herein.

234.    Defendants have been enriched at the expense of the Plaintiffs.  Among other

things, Defendants are operating the TELEGRAM iOS App on an ongoing basis, using and

controlling the TELEGRAM mark throughout the United States, using the TELEGRAM

software without payment or authorization, controlling the affairs of Telegram LLC, Digital

Fortress LLC, and Pictograph LLC without authorization, and controlling sales and distribution

to Apple users on an ongoing basis.

235.    Defendants have been enriched through conduct that violates both federal and

New York State statutory law as well as New York State common law.

236.    Accordingly, Defendants have been unjustly enriched and are liable to Plaintiffs.

*Eighteenth Cause of Action*
*(Accounting)*
*Against Defendant Neff*

237.    Paragraphs 1 to 236 are incorporated as if fully set forth herein.

238.    Defendant Neff was acting as a fiduciary for Mr. Durov in connection with the

formation of the LLCs and their management.  Based on Mr. Durov's fiduciary relationship with

Defendant Neff, Plaintiffs contributed substantial sums of money to the LLCs.

239.    Defendant Neff breached the fiduciary duties that he owed to Mr. Durov as set forth in the Sixth Cause of Action.

240.    Mr. Durov is the beneficial owner of the LLCs and thus has an interest in the LLCs and their assets.

241.    The actions of Defendant Neff in breaching his fiduciary duty and of the UCP Partner Defendants and Defendants Neff and Perekopsky in preventing Mr. Durov from exercising his ownership rights in the LLCs and their assets, establish that a demand for an accounting would be futile.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Award Plaintiffs compensatory damages as provided by law;

B.    Award Plaintiffs punitive damages as provided by law;

C.    Award Plaintiffs treble damages as provided by law;

D.    Award injunctive relief against further violations of 15 U.S.C. § 13(c), 15 U.S.C. § 1125(a), or New York statutory or common law;

E.    Declare, adjudge, and decree that Pavel Durov is the lawful owner of Digital Fortress LLC, Telegram LLC, and Pictograph LLC as well as the TELEGRAM mark;

F.    Appoint a receiver to oversee the operations of the LLCs for the purpose of preserving and protecting the value of the LLCs and to take immediate control over the operations of the LLCs and all books, records, accounts, revenues, and other items incidental thereto, and to perform such other acts as the Court orders and deems appropriate;

G.    Impose a constructive trust in favor of Plaintiffs on any assets of Telegram LLC, Digital Fortress LLC, and Pictograph LLC;

H.    Order an accounting with respect to any assets of Telegram LLC, Digital Fortress LLC, and Pictograph LLC;

I.    Award Plaintiffs their reasonable attorneys' fees and costs; and

J.      Award Plaintiffs such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury on issues so triable.

Dated: New York, New York
April 30, 2014

              FRIED, FRANK, HARRIS, SHRIVER
                & JACOBSON LLP

By:       William McGuinness
                William G. McGuinness
                James W. Dabney
                David M. Morris
                One New York Plaza
                New York, New York 10004
                (212) 859-8000
                william.mcguinness@friedfrank.com
                *Attorneys for Plaintiffs*
                *Pavel Durov, Telegram Messenger*
                *LLP, and Dogged Labs Limited*

9375214