E6qzdurc                    Conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  PAVEL DUROV, et al.,

4              Plaintiffs,

5          v.                        14 CV 3063 (LGS)

6  DAVID AXEL NEFF, et al.,

7              Defendants.

8  ------------------------------x

9                                    June 26, 2014
                                     11:20 a.m.
10
   Before:
11
                    HON. LORNA G. SCHOFIELD,
12
                                         District Judge
13
                         APPEARANCES
14
   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
15       Attorneys for Plaintiffs
   BY:  JAMES W. DABNEY
16       DAVID M. MORRIS

17

18 O'HARE PARNAGIAN LLP
        Attorneys for Defendant Neff
19 BY:  JEFFREY S. LICHTMAN
        ANDREW LEVITT

20

21 MAURIEL KAPOUYTIAN WOODS
        Attorneys for Defendants Pictograph LLC, Digital Fortress
   LLC and Telegram LLC
22 BY:  SHERMAN KAHN

23

24

25

1          (Case called)

2          MR. DABNEY:  James Dabney, Fried, Frank, Harris

3   Shriver & Jacobson LLP for the plaintiffs.  And with me is

4   David Morris and Sharon Dougherty.

5          THE COURT:  Good morning.

6          MR. LICHTMAN:  Jeffrey Lichtman with O'Hare Parnagian

7   representing defendant David Axel Neff, and accompanying me is

8   Andrew Levitt.

9          MR. KAHN:  Sherman Kahn, Mauriel Kapouytian and Woods

10  representing defendants Pictograph LLC, Digital Fortress LLC

11  and Telegram LLC.

12         THE COURT:  Okay, so we are here for premotion

13  conference.  I have the letter dated June 5th, 2014 from Mr.

14  Dabney, and the proposed motion would be to make alternative

15  service on the so-called Russian defendants and defendant Yuri

16  Kachuro.  I've read the letter.  I don't -- we have not

17  received any opposition.

18         Mr. Dabney, are you aware of any opposition?

19         MR. DABNEY:  We have not received any opposition, your

20  Honor.  Yes, we have not received any opposition.

21         THE COURT:  Okay.  So, and I assumed that the

22  defendants at the back table have no position on this one way

23  or other.  Is that right?

24         MR. LICHTMAN:  That's correct, your Honor.

25         THE COURT:  Okay.  So here is where I am on this.  I

1    agree with you it would be a waste of your time and mine to go

2    ahead with the formal motion, but I do have some concerns.

3           It is clear to me under the case law that because the

4    Russian Federation is a party to the Hague Convention and does

5    not permit service of documents by the methods listed in

6    Article 10 of the Hague Convention which includes mail, that

7    service cannot be effected by mail, and there is Southern

8    District, at least Southern District case law to that effect,

9    and so the proposal to serve by mail won't work.  The

10   alternative is to serve by e-mail.  And service by e-mail would

11   be appropriate as long as it meets the requirements for

12   alternative service, and that is that it's reasonably

13   calculated to apprise the defendant of the pendency of the

14   action and afford an opportunity to respond.

15          Based on the record that I have, I don't think that I

16   am there yet, but that doesn't mean that we can't get there.

17          So my question for Mr. Dabney, and I may ask you to

18   follow up with an affidavit, is tell me about these e-mail

19   addresses and why you think they're reliable.  The fact that

20   they didn't bounce back is not very persuasive in my mind.

21          So first tell me where you got the e-mail addresses as

22   to each of those defendants and any other facts that you know

23   that gives them some indicia of reliability.  And the kinds of

24   facts that have been cited in other cases are that somebody's

25   actually received e-mails from these folks at these addresses

1   or that there is a website that puts out the e-mail address as

2   the one to be used, or that you have some other knowledge that

3   that e-mail address is actually used frequently by the people

4   in question.  So, Mr. Dabney, go ahead.

5          MR. DABNEY:  Yes, your Honor.  As we indicate on page

6   two of our letter, one of the corporate defendants is named

7   United Capital Partners, which does have a website and which

8   does identify and provide e-mail address for each of the

9   individual defendants that we seek to serve by e-mail and by

10  private courier, which we think can be interpreted as not a

11  form of mail, but a private non-mail express delivery service.

12  So we could supplement the record, if the Court deemed it

13  necessary, with evidence that at least some of these defendants

14  have received a number of communications from Mr. Durov at

15  these addresses and have sent communications to him from these

16  addresses --

17         THE COURT:  Okay.

18         MR. DABNEY:  -- within the recent past.

19         THE COURT:  All right.  That would be very helpful.

20         So what I would like from you is an affidavit from

21  someone with knowledge about why these e-mail addresses are

22  reliable.  And certainly if somebody can say there have been

23  communications to and from, that would be good.  Be sure that I

24  have evidence with respect to each e-mail address.  Don't just

25  throw them together.

1                MR. DABNEY:  Yes.

2                THE COURT:  And then if you could give me a proposed

3      order as well.  Assuming that you show a factual basis as to

4      each e-mail address, then I'll sign a proposed order.

5                MR. DABNEY:  That would be excellent.

6                I'd just like to note for the record, I think that the

7      word "mail" can rightly be interpreted as applying to mail, and

8      I'm sure your Honor is aware that you know Rule Four was

9      amended to provide not just service by mail in certain, but by

10     private express.  So we have proposed in addition for whatever

11     value --

12               THE COURT:  And I think belt and suspenders is fine,

13     and I would include that in the order.  As long as we have at

14     least one method that I'm comfortable is proper service, it

15     does no harm to use another as well.

16               MR. DABNEY:  Right, very well.

17               THE COURT:  Okay.

18               MR. DABNEY:  That's fine.

19               THE COURT:  It's odd to be here for a very first

20     conference to be talking only about this.  And I, frankly,

21     don't recall whether I have scheduled a Rule 16 conference.

22               MR. DABNEY:  We're due to reappear before your Honor

23     on Monday.

24               THE COURT:  I'm so sorry.  I could have done this more

25     efficiently.

1          MR. DABNEY:  It's quite --

2          THE COURT:  And are we appearing on Monday for the

3    Rule 16 conference?

4          MR. DABNEY:  Yes.  We submitted a joint submission

5    with the proposal as to discovery cutoff with the appearing

6    defendants and so, yes, we --

7          THE COURT:  Okay.  My apologies.  I wish you a happy

8    4th and I look forward to seeing you all again.

9          MR. LICHTMAN:  Your Honor?

10          THE COURT:  Yes.

11          MR. LICHTMAN:  May I please raise a couple ancillary

12    points?

13          THE COURT:  Of course.

14          MR. LICHTMAN:  Thank you.

15          We had also discussed with counsel for plaintiffs as a

16    limited group of defendants who happen to be residing in the

17    United States, and we view ourselves really as the tail wagging

18    the dog in this case, that we had discussed how we would serve

19    the purposes of efficiency and economy if there would be a

20    unified briefing schedule with regard to the anticipated

21    motions to dismiss against this 18 count complaint with federal

22    and state causes of action.

23          We had anticipated that your Honor would be granting

24    some form of alternative service, and that that would mean that

25    would be some sort of appearances by the other foreign

E6qzdurc                    Conference

1    defendants.

2              THE COURT:  And what makes you think they will appear?

3              MR. LICHTMAN:  Well, I'm just assuming that there

4    would be some sort of knowledge very soon as to whether or not

5    they will be appearing.  So I think that that would become very

6    clear very soon.  And what we were hoping was that we would be

7    able to have some sort of briefing schedule for that motion

8    that could accommodate their appearance should they appear.

9    And we had set that forth in the proposed order.  Right now we

10   have a July 3rd date for the motions to dismiss.  We were

11   coming to a schedule to propose to the Court that it would be a

12   July 31st motion, with then opposition and briefing that would

13   be extended according to the proposal, and that way your Honor

14   wouldn't have sequential and overlapping briefing on the same

15   or --

16             THE COURT:  That seems to make sense to me.  I have a

17   suspicion we may never see these defendants, that they may not

18   appear.  But I think on the oft chance that they will,

19   extending it for 30 days probably doesn't do any harm.

20             Does the plaintiff have any objection to that?

21             MR. DABNEY:  No, your Honor, we do not.

22             THE COURT:  Okay.

23             MR. LICHTMAN:  And on a related point, your Honor?

24             THE COURT:  So are you going to submit that briefing

25   schedule to me as part of the joint scheduling order or --

1          MR. LICHTMAN:  It actually already has been

2     incorporated in the proposed order.

3          THE COURT:  Okay.

4          MR. LICHTMAN:  What I also would like to suggest, your

5     Honor, is in light of the fact that we still have the

6     alternative service issue coming up, and we do have only a

7     limited array of defendants here, it also might make some sense

8     to have a short adjournment of the conference till later in

9     July so the Court could see who elects to appear, and have the

10     benefits of those appearances to crystallize exactly what the

11     issues are on the table and have them handled.

12          THE COURT:  What I likely would do at the conference

13     is get the order in place, and I'm very interested in doing

14     that.  How does the plaintiff feel about adjourning the

15     conference?

16          MR. DABNEY:  Your Honor, we would like to go forward

17     on the 30th.  We're prepared to do so.  And there are some

18     urgent matters in this case that we proposed a very accelerated

19     pretrial discovery schedule, very aggressive one, and so we

20     think we should start and get going with discovery and get to

21     the merits.

22          THE COURT:  Yes, Mr. Lichtman.

23          MR. LICHTMAN:  Thank you, your Honor.

24          With regard to the matters that I think Mr. Dabney

25     might be referring to, that might have to do with the

1   preliminary dates in the order with regard to commencing

2   discovery.  We as a group have agreed that discovery should not

3   be stayed pending the motion, and we're totally comfortable

4   with proceeding.  The question that we had was whether or not

5   there's going to be another conference soon --

6             THE COURT:  Well --

7             MR. LICHTMAN:  -- with other people who might object

8   to the schedule.

9             THE COURT:  I don't like to waste lawyers' time or

10  money, but I'm also very eager to get this case, as well as any

11  others, started.  So let me ask this.  My apologies for not

12  being aware of the proposed case management plan.  It's filed

13  on the docket sheet?

14            MR. DABNEY:  Yes.

15            THE COURT:  Do you have any objection to taking a five

16  minute recess, let me look at it?  I may be able to enter it

17  and then we don't have to come back.

18            MR. LICHTMAN:  Your Honor, I think it's been e-mailed

19  to chambers, but I'm not certain.  It's been the subject of ECF

20  filing.

21            THE COURT:  My clerk says that we have it.  Because

22  I'm looking at the docket sheet, I didn't see it on the docket

23  sheet, so it must be in an e-mail box.  If you could print it

24  for me, I'll look at it and we can come back here in five

25  minutes and try and deal with it.  Okay?

1          MR. LICHTMAN:  Thank you, your Honor.

2          (Recess)

3          THE DEPUTY CLERK:  All rise.

4          THE COURT:  Okay, counsel, thank you for pointing out

5     these materials to me.

6          So I have quickly read the joint letter and I have

7     reviewed the case management plan.  And what I would love to do

8     is hear, very briefly, what the case is about.  I think I know

9     that from the letters that I had read for the motion, as well

10    as this letter, but just a short version of what it's about and

11    why you think you have claims under all these acts.  But

12    don't -- let's not spend all morning here.

13         And then I'd like to hear from the defendants who your

14    clients are and what they have to do with any of this, and then

15    I will address the case management plan.

16         So, Mr. Dabney.

17         MR. DABNEY:  Thank you, your Honor.

18         THE COURT:  The best way to do this actually is to

19    pick up the mic and put it on the wood part of the desk right

20    in front of you, and then point it straight up and keep your

21    voice up so that way the Court Reporter will be able to hear

22    you.

23         MR. DABNEY:  Very good.

24         Your Honor, this case is about a communication system

25    that our clients designed, paid for, constructed and operated,

E6qzdurc                    Conference

1    and as to virtually all of which continue to operate throughout

2    the world under the brand name Telegram.

3              THE COURT:  Who are your clients?  Are they people,

4    are they entities?

5              MR. DABNEY:  Pavel Durov is a Russian individual.  He

6    is a public personage in Russia, and he is -- he's referred to

7    in the complaints as -- he is to the Russian Federation --

8              THE COURT:  I saw the Mark Zuckerberg.  Okay.

9              MR. DABNEY:  And this communication system is the

10   subject of a rival claim made by the non-appearing defendants,

11   who are alleged to have engaged in bribery and other wrongful

12   conduct in the United States in order to induce individuals

13   associated with the appearing defendants to take assets that

14   Mr. Durov and his entities purchased, paid for, configured and

15   operated.

16             THE COURT:  And why is this a matter for the Southern

17   District of New York?

18             MR. DABNEY:  It's a matter for the Southern District

19   of New York because the corporate defendants, some of them are

20   New York entities.  The monies that came in to finance the

21   construction of the Buffalo facility are monies that came into

22   the Southern District of New York.  And the Southern District

23   of New York clearly has personal jurisdiction over central

24   actors, and many of the critical events whereby monies came in

25   and were misappropriated occurred.  So it is a case that has

1   very strong ties to the United States.  And at the moment what

2   makes the case somewhat urgent is that the Telegram service

3   provides, by means of clients, software that's configured

4   differently for different kinds of mobile devices.  So the

5   Android version of that, for example, is one that is still

6   under the plaintiff's control, but the version of it that was

7   created for the iPhone happened to be distributed via certain

8   assets that were in the State of New York.  And by virtue of

9   the wrongful conduct that we have alleged in the complaint, the

10  Russian defendants persuaded certain of the domestic defendants

11  to change the credentials necessary in order to update the

12  client software.  And ironically using these unlawful, we

13  contend, are criminal tactics.  They are jeopardizing the

14  integrity of the service and system Mr. Durov and his

15  affiliates built and own.

16         So we are seeking -- ultimately, one reason why this

17  case is of some urgency is that every day that passes where the

18  owners and operators of the system everywhere else in the

19  world, except for this one version of here are not able to

20  update and maintain this client software, it is jeopardizing

21  the integrity of the system.  And so we are ultimately going to

22  be seeking injunctions from the Court to direct the restoration

23  to the plaintiff of the ownership of not just these assets, but

24  there is also a pending application for registration of the

25  trademark Telegram that again is owned everywhere in the world

1  by the plaintiffs, but it was filed here in the United States

2  under the instructions and with the money provided by the

3  plaintiffs and --

4          THE COURT:  And I gather from the letter that there

5  are parallel actions going on, two by arbitration and one

6  somewhere else, Bahamas or somewhere.  What is the status of

7  those, and what do they have to do with this and why so many

8  litigations over the same matter?

9          MR. DABNEY:  It is the plaintiff's position that those

10  proceedings are completely independent of this dispute that we

11  have here.  Those proceedings have to do with a contract claim

12  under non-United States law that certain of the non-appearing

13  defendants are asserting.  They are asserting, as I understand

14  it, that the construction of the Telegram system was by --

15  some kind of corporate opportunity that they have some claim

16  to, and there is an arbitration involving that.  And there's a

17  counterclaim by Mr. Durov who says that he had a right of first

18  refusal or right of first offer with regard to certain shares

19  that certain non-appearing defendants have taken that was

20  violated by conduct they did.  So those are contractual issues

21  that have to do with certain ownership issues, but everybody --

22  I don't think there is any dispute that the Telegram system and

23  the software and everything was designed, constructed and

24  controlled and operated by Pavel Durov until these very recent

25  events, and still is everywhere except for this one piece.  So

E6qzdurc                    Conference

1  we don't feel that the overseas arbitration proceedings by --

2  which are going to go on -- should have any impact on our

3  urgent need to try to regain full control over this piece of it

4  that these defendants have been persuaded apparently to try and

5  hand over to the non-appearing defendants in Russia.

6         THE COURT:  Okay, thank you.

7         Is there one person who would like to speak for the

8  defendants?

9         MR. LICHTMAN:  Thank you, your Honor.  Let me move the

10  microphone.

11        THE COURT:  I could hear you.  Thank you.

12        MR. LICHTMAN:  Okay.  So we represent -- O'Hare

13  Parnagian represents an individual David Axel Neff who created

14  three LLC entities, and they're represented by counsel, Sherman

15  Kahn, who is representing them separately.  These LLCs run and

16  had erected data centers across the world, and Mr. Neff was the

17  person who had formed and who was the hundred percent owner of

18  those entities.  If I could just work backwards a little bit?

19        THE COURT:  Sure.

20        MR. LICHTMAN:  I believe that when you asked counsel

21  for the plaintiffs about these parallel proceedings, first of

22  all, we would -- we don't have any personal knowledge of those

23  proceedings because we're not involved with them.  Those really

24  are -- I would characterize them, based on my understanding,

25  not as contractual matters, but as essential corporate disputes

1    between shareholders in VK.com with regard to the essential

2    question here, the core threshold question, and that is who

3    actually does own Telegram, which entity is it.

4         Now, Mr. Durov might have expended energy and money,

5    but the question is did he do that for himself as a human

6    individual or did he do that in his capacity working for VK.com

7    and, therefore, it should be an asset of VK.  That is actually

8    an extremely important threshold question to whether or not he

9    has any rights here at all.

10        Now, Mr. Neff really does not have a lot of personal

11   insight.  He might have some, but we believe that this is

12   really going to be a question that is going to be determined in

13   many different ways through the different proceedings.

14        THE COURT:  And who and what is VK, and why are they

15   not a party?

16        MR. LICHTMAN:  Well, as a defendant I can't say why

17   they're not a party, but they are the corporate entity that

18   owns the Russian Facebook Enterprise known as VKontakte, which

19   is the contracted for, I guess marketing purposes to VK, and

20   that is the Facebook analog in Russia and Eastern Europe.

21        THE COURT:  Okay.

22        MR. LICHTMAN:  So the question really becomes whether

23   or not this Telegram app in light of the high value of

24   messaging apps that has been really set in a very extreme level

25   by the purchase of what's app at $19 billion, whether or not

1   such apps and such assets should be belonging to VK.com or

2   Mr. Durov individually or something else.  That's a battle

3   that's well beyond Mr. Neff's perview, although he has some

4   insight into some aspects of this as a person who was working

5   in the United States through the LLC entities that he was

6   working with.

7          So we don't view these necessarily as parallel

8   proceedings in these other courts.  We view them really as the

9   center stage for a lot of these disputes, but it spilled over

10  here in what we would call a retaliatory action where they're

11  trying to create another front on this issue.  And that's

12  really one of the reasons why earlier I had mentioned that we

13  view this as our participation as the tail wagging the dog with

14  regard to this.  We're here, we'll participate fully in

15  discovery, and we will defend the position of Mr. Neff and the

16  LLCs fully, to the extent that we could prove that Mr. Durov

17  and his related entities are not beneficial owners of this in

18  any way, and there have been no violations of RICO in any way,

19  shape or form.  There have been no state causes of action that

20  really can be sustained under the facts as alleged in the

21  complaint, and that's the way we see it, your Honor.

22          THE COURT:  Okay thank you.

23          I know you don't have to be reminded, for purposes of

24  the motion you don't need to prove anything, but you do have to

25  look at the face of the complaint, see whether it's sufficient

E6qzdurc                    Conference

1    or not.  I have rules in my individual rules regarding exchange

2    of letters concerning the complaint and motions to dismiss, and

3    I would ask you to follow those rules.

4          I had a couple of questions about your schedule.  Let

5    me deal with the motion to dismiss first.  That schedule seems

6    fine.  It is very prolonged, but I assume that that's for a

7    reason and that you have arguments you need and want to make.

8    But what I will ask you to do, and the way I will modify this

9    schedule is you should consider all these dates as your

10   deadlines, but do not file anything, especially do not file a

11   motion until all of the papers are prepared.  So that once the

12   reply has been prepared, then the plaintiff should file the

13   motion and the parties should file all the other papers at that

14   time.  And my rules also specify that I get a courtesy hard

15   copy from the movant of all the papers in order, so just follow

16   those rules as well.  So bottom line is adhere to these

17   deadlines, but don't file anything until you file everything at

18   once on October 22nd.  Okay.

19         Fact discovery.  At the moment, it seems like it may

20   be more confined because we don't have the Russian defendants.

21   You've asked for a little bit more time than I normally allow.

22   There may be a good reason for that, but I'll let someone

23   explain it.

24         MR. DABNEY:  Your Honor, I think the contemplation of

25   the parties in the courtroom that discovery will proceed

E6qzdurc                    Conference

 1   immediately and the extended briefing schedule reflects the

 2   plaintiff's view that there is no meritorious motion.

 3            THE COURT:  So the real question, though, is why not

 4   cut off fact discovery at the end of October instead of end of

 5   November.  That's what my schedule normally would be.

 6            MR. DABNEY:  That would be fine with the plaintiffs.

 7            THE COURT:  Defendants.

 8            MR. LICHTMAN:  We're just trying to be somewhat

 9   realistic, your Honor, in connection with the fact that we do

10   have Russian individuals here, so we're trying to give a little

11   bit of slack to the schedule for, anticipated glitches here and

12   there without being extreme, and asking the Court's indulgence

13   too much.  We think that a 30 day extension is warranted given

14   the configuration of the parties and non-parties.

15            THE COURT:  Okay.  So that seems reasonable to me.  I

16   just want you to know that since this is your schedule and

17   you've agreed on it and proposed it, I will stick to it.  So I

18   see these as firm and real dates, unless something exceptional

19   comes up, and you need to understand that.

20            With respect to experts, I was interested in what

21   your, quote, technical subjects were.  How many experts and

22   what kinds of experts do you envision?

23            MR. DABNEY:  From the plaintiff's side, it is -- we

24   have not made a final decision whether we will need to use

25   people other than our own people in order to demonstrate the

1   origin and ownership of the Telegram system.  So our

2   contemplation is there is a real chance that the plaintiff will

3   not need any experts in this case, because they'll come in and

4   describe what they did and the monies that they each lost are

5   monies that they paid out to finance all these data centers and

6   distribution, and it was simply taken by the other side.  So

7   we, if we have experts in this case, it will be about

8   demonstrating what Telegram is and how it operates and why it's

9   valuable.  And then if there is a need to go beyond just

10  showing the investments the plaintiffs have made that have just

11  been taken, we would have a damages expert.

12          THE COURT:  Okay.  Could I hear from the defendants on

13  experts?

14          MR. LICHTMAN:  At this juncture, your Honor, because

15  it's plaintiff's burden of proof, we are not fully crystalized

16  in terms of array of experts we would need.  But we would

17  anticipate the potential for experts in certain fields of

18  technology to be able to better describe what is at issue here

19  beyond the parties making contentions, so that whether or not

20  certain causes of action really are viable can be viewed

21  through the explanation not just of the parties, but also

22  through, you know, experts in the field.  There might be other

23  types of experts, but we're not actually focusing on anything

24  else other than that at this point, but we'll have to see the

25  facts discovery as it develops.

E6qzdurc                    Conference

1       THE COURT:  Okay.  So I will go ahead and leave this

2   date the way it is, meaning the expert discovery cutoff date,

3   and remind you that you may change the interim dates but the

4   fact discovery cutoff date is a firm date and the expert

5   discovery cutoff date is a firm date.  The subsidiary dates

6   under those you may change by agreement, but you may not

7   change, without coming to me, the fact discovery cutoff and the

8   expert discovery cutoff.

9       With regard to status letters and conferences, I would

10  like a status letter -- I'll change the dates slightly --

11  August 25th and October 15th.  And, in addition, to hearing

12  about discovery in at least the October 15th letter, I'd like

13  to know whether you anticipate experts, because if the answer

14  is no, I'm likely to change the schedule so that we can keep

15  moving.  And if the answer is yes, we'll look at where we are.

16      MR. LICHTMAN:  Just a personal small point, your

17  Honor.

18      THE COURT:  Yes, of course.

19      MR. LICHTMAN:  If I may.  And that is --

20      THE COURT:  You'll be on vacation.

21      MR. LICHTMAN:  Well, it's not really vacation.  I know

22  there is separation of church and state, but that comes right

23  in the middle of the Jewish holiday period.

24      THE COURT:  Oh, I'm sorry.

25      MR. LICHTMAN:  So I'm -- that's okay, your Honor.  I'm

E6qzdurc                    Conference

 1    just wondering if we might make it one week later.

 2            THE COURT:  Sure.  We can stick to the September 4

 3    date, but I'll do September 4 and October 15th.

 4            MR. LICHTMAN:  Well, actually, no, the October date is

 5    the problem, not the --

 6            THE COURT:  The October date, because it's Rosh

 7    Hashana and Yom Kippur?

 8            MR. LICHTMAN:  They're all alternate side of the

 9    street holidays verifiable, your Honor.

10            THE COURT:  But that's all of October.  So what date

11    do you want for your other letter, October?

12            MR. LICHTMAN:  If the October 15th letter could be put

13    to October 23rd, that would be helpful.

14            THE COURT:  Okay, so why don't we stick with

15    August 25th and October 23rd.

16            MR. LICHTMAN:  Yes.

17            THE COURT:  And would you let me know in the

18    October 23rd letter about expert discovery, as well as fact

19    discovery?

20            MR. LICHTMAN:  Thank you, your Honor.

21            THE COURT:  Sure.

22            The conference on January 6 will be at 10:30.  The

23    conference on February 18th will be at 10:30.  And I will, and

24    with the exception of the actual filing date for the motion to

25    dismiss, I'll enter the order as you have proposed it to me

1    with those additions.

2           So I will also cancel the conference that we have

3    scheduled for next week, and I'm glad we were able to be

4    efficient.

5           MR. LICHTMAN:  Thank you very much, your Honor.  I'm

6    sorry.

7           THE COURT:  Anything else?

8           MR. DABNEY:  Yes, your Honor.  Since we are all here

9    together, we'd like to hand up to the Court some of the proof

10   that your Honor was asking about.  We provided a copy to your

11   Honor's law clerk.

12          THE COURT:  Okay.

13          MR. DABNEY:  We provided copies to opposing counsel.

14   They take no position on it.  But the affidavit of David Morris

15   attaches copies of recent e-mails in April of 2014 as exhibits

16   to and from the plaintiff with regard to defendants Sherbovich,

17   with Kachuro, with Victoria Lazareva, and it states -- we do

18   not actually attach a copy, but we can if the Court cannot

19   accept Mr. Morris' statement in paragraph 11b, that he has seen

20   e-mail as recently as April 22, 2014, to defendant Perekopsky.

21   But these documents, as well as the website of defendant United

22   Capital Partners all confirm that the e-mails with which we

23   have been transmitting by simple mail transfer protocol, the

24   documents in this case are good addresses that these defendants

25   have recently used.  So it would be our hope if --

1      THE COURT:  Okay, I'll look at this more closely, and

2 if you don't mind submitting at least one or two e-mails that

3 illustrate 11b, that would be great.  And the best way to do

4 that is to file, just file everything on ECF.  That way I will

5 be sure to get it.

6      MR. DABNEY:  That's what we'll do.  We also have a

7 proposed order which we've --

8      THE COURT:  How did you do that so quickly?

9      MR. DABNEY:  We thought perhaps the Court might rule

10 on this conference today.

11      THE COURT:  Okay, all right.  If you want to hand that

12 to my Law Clerk, that would be appreciated, and if you would

13 e-mail a word version to my chambers, that would be great.

14      MR. DABNEY:  We'll do that.

15      THE COURT:  Thank you.  Anything else?

16      MR. DABNEY:  No.  That's it for today.  Thank you,

17 your Honor.

18      THE COURT:  Thank you very much.

19      MR. LICHTMAN:  Thank you, your Honor.

20      (Adjourned)

21

22

23

24

25